# EXHIBIT A

## <u>INDEX OF STATE COURT DOCUMENTS</u>

Cause No. 2018-74113
*Antwan Henry v. Ditech Financial LLC, et al*
In the 80th Judicial District Court of Harris County, Texas

| | | |
|---|---|---|
| 1. | 10/15/2018 | Docket Sheet |
| 2. | 10/15/2018 | Plaintiffs' Original Petition |
| 3. | 10/22/2018 | Proof of Service on Ditech Financial LLC |
| 4. | 10/22/2018 | Proof of Service on Carrington Mortgage Services LLC |
| 5. | 10/23/2018 | Proof of Service on Bank of New York Mellon |
| 6. | 10/24/2018 | Proof of Service on Bank of New York Mellon f/k/a/ Bank of New York Trustee |
| 7. | 11/09/2018 | Original Answer of Carrington Mortgage Services, LLC and The Bank of New York Mellon f/k/a The Bank of New York as trustee |
| 8. | 11/12/2018 | Original Answer of Ditech Financial LLC f/k/a Green Tree Servicing, LLC |

Office of Harris County District Clerk - Chris Daniel

| **HCDistrictclerk.com** | HENRY, ANTWAN vs. CARRINGTON MORTGAGE SERVICES LLC | 11/20/2018 |
| | Cause: 201874113     CDI: 7     Court: 080 | |

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## SETTINGS
No Settings found.

## NOTICES
No Notices found.

## SUMMARY

| CASE DETAILS | | CURRENT PRESIDING JUDGE | |
|---|---|---|---|
| File Date | 10/15/2018 | Court | 080th |
| Case (Cause) Location | | Address | 201 CAROLINE (Floor: 9) HOUSTON, TX 77002 Phone:7133686100 |
| Case (Cause) Status | Active - Civil | | |
| Case (Cause) Type | Other Property | JudgeName | LARRY WEIMAN |
| Next/Last Setting Date | N/A | Court Type | Civil |
| Jury Fee Paid Date | N/A | | |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| HENRY, ANTWAN | PLAINTIFF - CIVIL | | |
| 11939 CANYON VALLEY DR, TOMBALL, TX 77377 | | | |
| CARRINGTON MORTGAGE SERVICES LLC | DEFENDANT - CIVIL | | PERRONE, GREGORY |
| 1209 ORANGE ST, WILMINGTON, DE 19801 | | | |
| BANK OF NEW YORK MELLON (FKA BANK OF NEW YORK TRUSTEE) | DEFENDANT - CIVIL | | PERRONE, GREGORY |
| BANK OF NEW YORK MELLON (THE) | DEFENDANT - CIVIL | | PERRONE, GREGORY |
| DITECH FINANCIAL LLC (FKA GREENTREE SERVICING LLC) | DEFENDANT - CIVIL | | SMITH, S. DAVID |

Office of Harris County District Clerk - Chris Daniel

BANK OF NEW YORK MELLON (THE) BY          REGISTERED AGENT
SERVING ITS CEO CHARLES W

## INACTIVE PARTIES

No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 11/12/2018 | ANSWER ORIGINAL PETITION | | | 0 | | SMITH, SAM DAVID | DITECH FINANCIAL LLC (FKA GREENTREE SERVICING LLC) |
| 11/9/2018 | ANSWER ORIGINAL PETITION | | | 0 | | PERRONE, GREGORY | BANK OF NEW YORK MELLON (FKA BANK OF NEW YORK TRUSTEE) |
| 11/9/2018 | ANSWER ORIGINAL PETITION | | | 0 | | PERRONE, GREGORY | BANK OF NEW YORK MELLON (THE) |
| 11/9/2018 | ANSWER ORIGINAL PETITION | | | 0 | | PERRONE, GREGORY | CARRINGTON MORTGAGE SERVICES LLC |
| 10/15/2018 | ORIGINAL PETITION | | | 0 | | | HENRY, ANTWAN |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|----------|------------|
| CITATION (CERTIFIED) | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | BANK OF NEW YORK MELLON (THE) BY SERVING ITS CEO CHARLES W | 10/15/2018 | 10/17/2018 | 10/23/2018 | | | 73553233 | CVC/CTM SVCE BY CERTIFIED MAIL |

240 GREENWICH ST NEW YORK NY 10286

| | | | | | | | | | | |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|----------|------------|
| CITATION (CERTIFIED) | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | CARRINGTON MORTGAGE SERVICES LLC | 10/15/2018 | 10/17/2018 | 10/22/2018 | | | 73553235 | CVC/CTM SVCE BY CERTIFIED MAIL |

1209 ORANGE ST WILMINGTON DE 19801

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 82566842 | Defendant's Original Answer and Affirmative Defenses | | 11/12/2018 | 4 |
| 82533137 | Original Answer | | 11/09/2018 | 3 |
| 82481343 | Domestic Return Receipt | | 10/29/2018 | 2 |
| 82481344 | Domestic Return Receipt | | 10/29/2018 | 2 |
| 82481345 | Domestic Return Receipt | | 10/29/2018 | 2 |
| 82481346 | Domestic Return Receipt | | 10/29/2018 | 2 |
| 82350971 | Certified Mail Receipt | | 10/18/2018 | 1 |
| 82350972 | Certified Mail Receipt | | 10/18/2018 | 1 |
| 82350973 | Certified Mail Receipt | | 10/18/2018 | 1 |
| 82350974 | Certified Mail Receipt | | 10/18/2018 | 1 |
| 82293495 | Certified Mail Tracking 7017 1450 0001 3700 9317 | | 10/17/2018 | 2 |

Office of Harris County District Clerk - Chris Daniel

| 82293496 | Certified Mail Tracking 7017 1450 0001 3700 9324 | 10/17/2018 | 2 |
| 82293497 | Certified Mail Tracking 7017 1450 0001 3700 9331 | 10/17/2018 | 2 |
| 82293498 | Certified Mail Tracking 7017 1450 0001 3700 9348 | 10/17/2018 | 2 |
| 82163854 | Plaintiffs Original Petition (Complaint) | 10/15/2018 | 39 |
| -> 82163860 | Civil Case Information Sheet | 10/15/2018 | 1 |
| -> 82163861 | Civil Process Request | 10/15/2018 | 1 |
| -> 82163863 | Civil Process Request | 10/15/2018 | 1 |
| -> 82163855 | Exhibit A | 10/15/2018 | 5 |
| -> 82163857 | Exhibit B | 10/15/2018 | 27 |
| -> 82163858 | Exhibit C | 10/15/2018 | 8 |

*P. 39*

**FILED**
Chris Daniel
District Clerk

OCT 15 2018

Time: _____ 1:00pm

Harris County, Texas

By _____ I. Coumi
Deputy

Antwan Henry
11939 Canyon Valley Dr
Tomball TX 77377-7636

CAUSE NO. **2018 74113**

| | |
|---|---|
| Antwan Henry, | ) IN THE DISTRICT COURT OF |
| Plaintiff, | ) HARRIS COUNTY TEXAS |
| | ) 80th JUDICIAL DISTRICT |
| | ) |
| CARRINGTON MORTGAGE SERVICES, LLC; | ) |
| | ) |
| THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5; | ) |
| | ) |
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5; | ) |
| | ) |
| DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S ORIGINAL PETITION (COMPLAINT)**

Comes now the Plaintiff and alleges:

Parties

*PLAINTIFF*

1

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

1. Plaintiff is the owner of the property located at 11939 Canyon Valley Dr, Tomball TX 77377-7636, legally described as:

> LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 404083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

with Property Tax Account # 119-685-002-0001 (hereafter "the Property").

2. There is no valid debt owed on the property.[1] Plaintiff has never borrowed money in a loan secured by the Property. Plaintiff has never borrowed credit for money in a loan secured by the Property.

*CARRINGTON MORTGAGE SERVICES, LLC*

3. Defendant Carrington Mortgage Services, LLC ("Carrington") is a foreign corporation doing business in Texas.

4. Defendant Carrington Mortgage Services, LLC (Delaware File No. 4327072) can be served by its Registered Agent, The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.

5. Carrington claims to be the loan servicer of a loan encumbering Plaintiff's property.

6. However, Carrington is not the loan servicer of any loan encumbering Plaintiff's property.

7. Carrington claims to be Attorney-in-Fact for THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.[2][3]

---

[1] If the plaintiff's action "attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt." (<u>Onofrio v. Rice</u>, 55 Cal.App.4th at p. 424.)

[2] The term "Registered Holders" is found on the Notice of Sale and on the APPOINTMENT OF SUBSTITUTE TRUSTEE, and nowhere else.

[3] CWABS appears to stand for CountryWide Asset Backed Securities.

2

COMPLAINT

8. However, Carrington is not and never has been Attorney-in-Fact for THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.

9. There is, in the Harris County records, no recorded Power of Attorney agreement between Carrington and THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.

10. Carrington claims to be Attorney-in-Fact for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.[4]

11. However, Carrington is not and never has been Attorney-in-Fact for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.

12. There is, in the Harris County records, no recorded Power of Attorney agreement between Carrington and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.

13. Carrington is acting like a loan servicer, mailing letters to Plaintiff requesting money.

14. Plaintiff has never received a Notice of Change of Servicer, naming Carrington as servicer.

---

[4] The term "Certificateholders" is found in the Assignment, and nowhere else.

3

COMPLAINT

*DEFENDANT THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS*
*TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED*
*CERTIFICATES, SERIES 2006-5*

15. Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 ("BNY <u>CERTIFICATEHOLDERS</u>") is a foreign corporation doing business in Texas.

16. Defendant BNY <u>CERTIFICATEHOLDERS</u> can be served via its CEO, Charles W. Scharf, c/o THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, address 240 GREENWICH STREET, NEW YORK, NY, UNITED STATES 10286.

17. Defendant BNY <u>CERTIFICATEHOLDERS</u> claims to be owner and holder of a Note encumbering the Property.

18. Defendant BNY <u>CERTIFICATEHOLDERS</u> is not owner and holder of any Note encumbering the Property.

19. Defendant BNY <u>CERTIFICATEHOLDERS</u> is not a mortgagee of any mortgage, mortgage loan, or deed of trust encumbering the Property, and otherwise has no interest in the property whatsoever.[5]

20. In the alternative and without waiving the foregoing, Defendant BNY <u>CERTIFICATEHOLDERS</u> took the Note with notice that it is in default. BNY <u>CERTIFICATEHOLDERS</u> knowingly put itself in harm's way.

---

[5] The caselaw finding that a borrower must assert an ability to tender the loan proceeds to maintain a quiet title claim against a mortgagee does not apply to this action where the Complaint alleges that Defendant is not a mortgagee. See Exhibit C.

4

COMPLAINT

*DEFENDANT THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5*

21. Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 ("BNY REGISTERED HOLDERS") is a foreign corporation doing business in Texas.

22. Defendant BNY REGISTERED HOLDERS can be served via its CEO, Charles W. Scharf, c/o THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, address 240 GREENWICH STREET, NEW YORK, NY, UNITED STATES 10286.

23. Defendant BNY REGISTERED HOLDERS claims to be owner and holder of a Note encumbering the Property.

24. Defendant BNY REGISTERED HOLDERS is not owner and holder of any Note encumbering the Property.

25. Defendant BNY REGISTERED HOLDERS is not a mortgagee of any mortgage, mortgage loan, or deed of trust encumbering the Property, and otherwise has no interest in the property whatsoever.

26. In the alternative and without waiving the foregoing, Defendant BNY REGISTERED HOLDERS took the Note with notice that it is in default. BNY REGISTERED HOLDERS knowingly put itself in harm's way.

*DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC*

27. Defendant DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC ("DITECH") is a Delaware corporation and can be served via its Registered Agent, THE

5

COMPLAINT

CORPORATION TRUST COMPANY, address 1209 NORTH ORANGE ST, WILMINGTON, DE 19801

28. Defendant DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC is wholly owned by GTCS Holdings, LLC which is a wholly-owned subsidiary of DITECH HOLDING CORPORATION F/K/A WALTER INVESTMENT MANAGEMENT CORP.

29. The Certificate of Formation of GREEN TREE SERVICING LLC was filed effective as of June 9, 2003.

30. Prior to becoming DITECH FINANCIAL LLC, Ditech Mortgage Corporation and Green Tree Servicing LLC were separate subsidiaries of their parent company, Walter Investment Management Corporation.

31. In August of 2015, Green Tree Servicing LLC merged with Ditech Mortgage Corporation to form a new company, Ditech Financial LLC d/b/a DITECH.

32. All Defendants are jointly and severally liable.

Factual Allegations:

33. All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

*OWNERSHIP AND POSSESSION*

34. Plaintiff was and is the owner of the Property.

35. The Property is located in a judicial district of Texas under the 1876 Constitution.

36. The Property is not located in territory owned by or subject to the exclusive legislative jurisdiction of the United States of America.

37. Plaintiff is, and has been, in continuous possession of the Property since on or about July 5, 2005.

38. Plaintiff did not make a forcible entry into the Property.

6

COMPLAINT

39. Plaintiff is not unlawfully holding the possession of the Property by for

40. Plaintiff is not wrongfully holding the real property.

41. Plaintiff is not wrongfully withholding the real property from another.

42. Plaintiff does not have a landlord-tenant relationship with any Defendant.

43. Plaintiff has never sold the Property.

44. Plaintiff has never intended to irrevocably grant or convey the Property to any party.

45. Plaintiff has never been properly served with any Notice of Trustee Sale.

*THE DEED TO PLAINTIFF*

46. On July 5, 2005, ROYCE MODEL HOMES, LP deeded the Property to Plaintiff, via a GENERAL WARRANTY DEED WITH VENDOR'S LIEN. This deed was recorded as Y586795. The undersigned hereby certifies that the attached Exhibit A is a true copy of that deed.

47. Plaintiff's title comes from that GENERAL WARRANTY DEED WITH VENDOR'S LIEN.[6]

*THE DEED OF TRUST*

48. On July 5, 2005, a DEED OF TRUST (hereafter "DOT") was recorded as Y586796.

49. The Deed of Trust bears the notation "MIN 1001504-060590071-6."

50. The first seven digits of a MIN identify the Lender.

51. However, 1001504 is not the identifying number for Network Funding, LP.

52. Because of the incorrect MIN, Plaintiff's payments were misapplied.

53. The Deed of Trust bears the notation: "Loan Number 30-05-0158."

54. The Deed of Trust does not bear Plaintiff's signature.

---

[6] This deed from Royce to Plaintiff is the "strength of Plaintiff's title." A plaintiff must establish his claim based on the strength of his title to the property as opposed to weaknesses of an adversary's title. Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App. 2001).

COMPLAINT

55. The Deed of Trust states: "After Recording Return To: MILESTONE MORTGAGE CORPORATION SUB-PRIME, 10255 RICHMOND AVENUE, SUITE 450, HOUSTON, TEXAS 77042"

56. The Deed of Trust names "L. B. HODGES" as "Trustee."

57. The Deed of Trust names "NETWORK FUNDING, L.P." as "Lender."

58. The Deed of Trust names MERS as beneficiary.

59. The Deed of Trust names "ANTWAN HENRY, A SINGLE PERSON" as "Borrower."

60. The DOT names NETWORK FUNDING, L.P. as "Lender."

61. However, NETWORK FUNDING, L.P. did not lend any money to Plaintiff.

62. NETWORK FUNDING, L.P. keeps General Ledger accounting entries.

63. NETWORK FUNDING, L.P.'s General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend any money to Plaintiff.

64. NETWORK FUNDING, L.P. did not lend any credit to Plaintiff.

65. NETWORK FUNDING, L.P.'s General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend any credit to Plaintiff.

66. NETWORK FUNDING, L.P. did not apply all payments received to Plaintiff's account.

67. Carrington keeps General Ledger accounting entries.

68. Carrington's General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend any money or credit to Plaintiff.

69. Carrington did not apply all payments received to Plaintiff's account.

70. DITECH keeps General Ledger accounting entries.

71. DITECH's General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend any money or credit to Plaintiff.

COMPLAINT

72. DITECH did not apply all payments received to Plaintiff's account.

73. THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 keeps General Ledger accounting entries.

74. THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5's General Ledger accounting entries show that NETWORK FUNDING, L.P. did not lend any money or credit to Plaintiff.

75. THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 keeps General Ledger accounting entries.

76. THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5's General Ledger accounting entries show that NETWORK FUNDING, L.P. did not lend any money or credit to Plaintiff.

77. The holder/owner/investor/real party in interest was never NETWORK FUNDING, L.P.

78. The holder/owner/investor/real party in interest is not now THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5.

79. The holder/owner/investor/real party in interest is not now THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 200´ ˜

80. The DOT names L. B. HODGES as "Trustee".

9

COMPLAINT

81. L. B. HODGES did not know he had been named as Trustee. Therefore, L. B. HODGES did not know about his powers, and could not exercise his powers, and therefore had no powers and was not in substance a Trustee.

82. The Deed of Trust states:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

83. Thus (assuming the Deed of Trust is valid), Plaintiff is contractually obligated to defend generally the title to the Property against all claims and demands.

84. Plaintiff's contractual obligation, expressed in the mortgage as quoted above, is to protect the interests of the holder/owner/investor/real party in interest.

85. The holder/owner/investor/real party in interest is not any Defendant.

86. No Defendant holds the note and the mortgage.

87. Plaintiff is not in default on any loan encumbering the Property.

88. The Deed of Trust states:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of

COMPLAINT

10

this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

      If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue [sic]. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

      If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

89. Neither BNY <u>CERTIFICATEHOLDERS</u> nor BNY <u>REGISTERED</u> HOLDERS nor Carrington ever gave Plaintiff the notice mentioned in the top line of Paragraph 22.

90. Neither BNY <u>CERTIFICATEHOLDERS</u> nor BNY <u>REGISTERED</u> HOLDERS nor Carrington ever gave Plaintiff the "notice of the time, place and terms of sale" mentioned in Paragraph 22.

*THE NON-SECURITIZATION AND NON-PERFECTED LIEN*

91. In the Notice of Substitute Trustee Sale, Barrett Daffin Frappier Turner & Engel, LLP claims that the Note has been securitized, because the name of the purported "Mortgagee" is "THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5," which is a typical securitization name.

11

COMPLAINT

92. However, the Note was not securitized.

93. The Note bears writing that shows it fails to qualify as a "negotiable instrument."

94. The endorsements and transfer and delivery never occurred (there was no "true sale").

95. The note is endorsed in blank with no transfer and delivery receipts.

96. No written delivery and transfer receipts exist.

97. No written evidence exists of pay outs and pay in transactions.

98. The lender of record, as can be proven by following the money trail, is not and never was NETWORK FUNDING, L.P.

99. The mortgage originator, although designated as "lender" or even "beneficiary" is not the creditor even for a hypothetical instant in time.

100. The purported securitization did not take place but it was treated as though it were real.

101. The actual facts of the closing were that the mortgage originator and designated "lender," NETWORK FUNDING, L.P., was merely a mortgage broker.

102. There is no perfected lien.

103. There was never intended to be a loan from the mortgage originator to Plaintiff.

104. The payments made pursuant to the PSA and the Assignment and Assumption agreement need an accounting, which will be obtained in discovery.

105. There were payments made on behalf of the pool or the trust to the investors but these payments did not reach the investors, or they did not entirely reach the investors.

106. No attempt has been made to allocate the payments to the underlying supposed assets, which are not assets because the loans were never assigned into the pool.

107. The failure to identify the undisclosed principal creditor creates uncertainty as to who one would approach if they wanted a satisfaction of mortgage.

12

COMPLAINT

108. Since that is not apparent on its face, and since it is an actual known fact that the originator is a straw-man, the lien was never perfected.

109. A "perfected lien" in one that gives reliable notice about the debt and the creditor. The paperwork in the instant case does neither one, since it neither identifies the creditor nor does it describe the terms received by the creditor via the PSA and other securitization documents.

110. An unperfected lien is no lien at all and therefore cannot be foreclosed. But that is only a title issue — it does not address the issue of the obligation which surely arose because the borrower received the benefit of the funding of the loan from SOMEONE, even if he doesn't know who it is. So the objective is to prevent foreclosure and then leave the issue of damages for loss of money to anyone who can prove they actually lost money.

*NO ELECTRONIC TRANSFER*

111. Plaintiff never gave his explicit agreement and authorization for his signature on any document to be transferred electronically.

112. Without that explicit agreement and authorization, the Note was not electronically transferable under the ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT (E-Sign) and the Uniform Electronic Transactions Act (UETA).

113. Without being electronically transferable, the Note could not lawfully be securitized.

*NO CHAIN OF TRANSFERS*

114. There is not an unbroken chain of transfers of the mortgage note from the originator to the trust.

115. There was not a proper chain of transfers to include the originator, the sponsor, the depositor and the designated Trustee for the Trust.

116. The Note was not endorsed to each named transferee by each necessary party in the chain of transfers.

13

COMPLAINT

117. The Endorsements are not signed by an authorized agent of transferor.

118. No proof of agency is referenced or attached to the Note.

119. Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 has a designated document custodian who holds the original notes for that Defendant, as well as all of the delivery and receipt certificates regarding the notes.

120. Defendant THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 has a designated document custodian who holds the original notes for that Defendant, as well as all of the delivery and receipt certificates regarding the notes.

121. No delivery receipt to document the transfer and delivery of the bearer note from the originator to the sponsor exists.

122. No acceptance receipt to document the transfer and delivery of the bearer note from the originator to the sponsor exists.

123. No delivery receipt to document the transfer and delivery of the bearer note from the sponsor to the depositor exists.

124. No acceptance receipt to document the transfer and delivery of the bearer note from the sponsor to the depositor exists.

125. No delivery receipt to document the transfer and delivery of the bearer note from the depositor to the Trust exists.

126. No acceptance receipt to document the transfer and delivery of the bearer note from the depositor to the Trust exists.

14

COMPLAINT

127. The designated document custodian for the Trust maintained possession of all such documents including the original bearer note.

*THE ASSIGNMENT OF DEED OF TRUST[7]*

128. On 11-10-2011, there was recorded in Harris County, TX as 20110473774 an ASSIGNMENT OF DEED OF TRUST ("Assignment"), purportedly signed Nov 04, 2011 (over five years after the 3/28/2006 "closing date" of the Trust), which stated:

129. "For Value Received, [MERS but NOT as Nominee] does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 … all beneficial interest under that certain Deed of Trust … together with the note(s) and obligations therein described …"

130. There is no comma after the word "TRUSTEE".

131. The entity "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW

---

[7] It is often said that an Assignment cannot be challenged by anyone who is not a party to it (in other words, the Assignment is none of the homeowner's business). However, Defendant BNY is likely to take the position, expressed in another case, that "Harris County property records make clear that the Deed of Trust currently belongs to BNY (through recorded assignment from MERS to BNY)."

This position makes the Assignment the homeowner's business, because a deed of trust gives both the lender and the beneficiary (including an assignee) the right to invoke the power of sale. See Ashley Martins v. BAC Home Loans Servicing, L.P. and Federal National Mortgage Association (No. 12-20559, 2013 WL 3213633):

"The Texas courts have repeatedly discussed the dual nature of a note and deed of trust. 'It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien.' Carter v. Gray 81 S.W.2d 647, 648 (Comm'n App.1935, writ dism'd). Where a debt is secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations.' Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex.App.—Corpus Christi 2002, pet. denied). The Texas courts have 'rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations.' Bierwirth, 2012 WL 3793190, at *3.10 A deed of trust 'gives the lender as well as the beneficiary the right to invoke the power of sale,' even though it would not be possible for both to hold the note. Robeson, 2012 WL 3793190, at *6.

"The 'split-the-note' theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself. Here, the mortgage was assigned to MERS, and then by MERS to BAC—the assignment explicitly included the power to foreclose by the deed of trust. MERS and BAC did not need to possess the note to foreclose."

Thus, to show a lack of right to foreclose, a plaintiff must show both that the defendant is not a "person entitled to enforce the note" AND that the defendant is not the beneficiary of the deed of trust through assignments.

15

COMPLAINT

YORK AS TRUSTEE FOR THE <u>CERTIFICATEHOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5" (with no comma) does not exist.

132. MERS, not as nominee, had no beneficial interest under the Deed of Trust, and had nothing to assign to BNY <u>CERTIFICATEHOLDERS</u>.

133. MERS, not as nominee, lacked authority to assign anyone else's interest to BNY <u>CERTIFICATEHOLDERS</u>.

134. Therefore, the Assignment assigned nothing.

135. The recording fee for the Assignment was paid by BNY <u>CERTIFICATEHOLDERS</u>.

136. The Assignment does NOT state "Registered Holders."

137. Thus, the Assignment does NOT assign the beneficial interest to BNY <u>REGISTERED HOLDERS</u>.

138. Plaintiff never received a letter notifying him of the Assignment.

139. At all relevant times, from the date of the loan closing until today, including the date of signing of the Assignment, MERS has never been registered to do business in Texas.

140. At all relevant times, MERS was not in good standing with the Secretary of State of Texas.

141. At all relevant times, MERS was not in good standing with the Secretary of State of its home state, Delaware.

142. Therefore, MERS had no authority to sign any document in commerce in California, including the Assignment.

143. MERS has never had any beneficial interest under the Deed of Trust.

144. MERS never had authority to assign the loan in its own right—as opposed to "as nominee" of Network Funding, L.P.

145. MERS was never given specific written directions by its principal to execute the

COMPLAINT

Assignment. See In re Agard, Eastern District of New York, No. 10-77338 (vacated on other grounds).

146. The Assignment was purportedly signed by Swarupa Slee as Vice-President of MERS (but NOT as Nominee for any party).

147. Swarupa Slee did not have authority to sign the Assignment.

148. At no time did any officer, employee or agent of MERS delegate to Swarupa Slee the authority to sign the Assignment.

149. At no time did any officer, employee or agent of any principal of MERS delegate to Swarupa Slee the authority to sign the Assignment.

150. Swarupa Slee did not read or sign the Assignment and did not know its contents.

151. Swarupa Slee did not sign the Assignment; someone else did, using that name.

152. No consideration was received by MERS for the Assignment.

153. On Nov 4, 2011, MERS was not nominee or agent of any party that owned or possessed any Promissory Note encumbering the Property.

154. The Assignment states: "Recording Requested By: Bank of America. Prepared By: Youda Crain... When recorded mail to CoreLogic"

155. Youda Crain is a CoreLogic employee

156. CoreLogic requested the recording of the Assignment.

157. No other entity besides CoreLogic requested the recording of the Assignment.

158. BNY CERTIFICATEHOLDERS had no knowledge of the Assignment.

159. BNY REGISTERED had no knowledge of the Assignment.

160. The Assignment is purportedly notarized by Tina Mazahri in Ventura County, California.

17

COMPLAINT

161. The Assignment was not properly notarized according to California law[8]. For example: The jurat is not correct. The jurat is for an affidavit, not an acknowledgment. The jurat does not name the corporation. The jurat does not identify the state of incorporation. The jurat does not include the "character of the officer". The jurat does not state that the signer is personally known to the notary, and there is no description of the identity card or other document. The Assignment is not acknowledged in a representative capacity. Tina Mazahri did not witness the signing. Tine Mazahri did not sign the jurat; someone else did, using that name.

162. No other document (power of attorney, etc.) related to this transaction was ever recorded.

163. None of the Defendants has ever owned, nor had an interest in, nor been entitled to enforce, any Promissory Note encumbering the Property.

164. Plaintiff made some payments that remain unaccounted for.

165. The Assignment shows on its face that MERS acted on its own, not "as nominee" of any party.

166. As of Nov 4, 2011, MERS did not own any Promissory Note encumbering the Property.

167. Thus the Assignment of Deed of Trust was false on its face, as it claims to assign  all beneficial interest under that certain Deed of Trust … together with the note(s) and obligations therein described …" and no such Note went from MERS to The Bank of New York (in any capacity).

168. For all of the above reasons, the Assignment is void.

169. The Assignment bears the notation "MIN 1001504-0605900071-6."

170. The Assignment's MIN does not match the Deed of Trust's MIN, which is "1001504-

---

[8] Foreign laws, such as California law, are facts to be proved; thus, this issue cannot be dismissed on a motion

18

060590071-6" (with only two consecutive zeroes rather than three). Thus the Assignment is defective and void.

171. The "MERS Milestones" (transfers and registrations) under MIN 1001504-0605900071-6 do not reflect the Assignment.

*THE APPOINTMENT OF SUBSTITUTE TRUSTEE*

172. On 07/25/2018, an APPOINTMENT OF SUBSTITUTE TRUSTEE ("Appointment") was recorded as RP-2018-334398.

173. The Appointment names THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 as "mortgagee, or as mortgage servicer for the mortgagee".

174. The entity named in the Appointment does not exist.

175. The Appointment states:

The undersigned as mortgagee, or as mortgage servicer for the mortgagee under Texas Property Code Sec.51.0075, does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead NATHAN SANCHEZ, REX KESLER, OR THOMAS REDER as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein.

176. The Appointment is purportedly signed by Maurreene D. Magdaleno as Default Document, Sr. Analyst of Carrington Mortgage Services LLC as servicer and attorney in fact for THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR <u>REGISTERED</u> HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5.

---

to dismiss, but must wait for summary judgment or trial.

COMPLAINT

177. The name in the Appointment (THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5) does not match the name in the Deed of Trust (THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5).

178. The Appointment was notarized by Wheny Wulandari in Orange County, California.

179. No Power of Attorney was attached to the Appointment.

180. There is no attorney in fact agreement between Carrington Mortgage Services LLC and THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 recorded in Harris County, Texas.

181. There is no unrecorded attorney in fact agreement between Carrington Mortgage Services LLC and THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5.

182. Carrington Mortgage Services LLC is not attorney in fact of THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5.

183. Maurreene D. Magdaleno did not have authority to sign the Appointment.

184. Maurreene D. Magdaleno did not read the Appointment and did not know its contents.

185. Maurreene D. Magdaleno did not sign the Appointment; someone else signed it using her name.

20

COMPLAINT

186. NATHAN SANCHEZ, REX KESLER, and THOMAS REDER do not have an arms-length relationship with The Bank of New York Mellon or Carrington Mortgage Services LLC.

187. The Appointment states: "RETURN TO: BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, 4004 Belt Line Road, Suite 100, Addison, Texas 75001"

188. Barrett Daffin did not have authority to prepare or file the Appointment, does not have an arms-length relationship with Defendants, and will benefit from the Appointment, therefore the Appointment is fictitious.

*THE NOTICE OF SUBSTITUTE TRUSTEE SALE*

189. On or about July 1, 2018, an officer, employee or agent of Barrett Daffin Frappier Turner & Engel, LLP, purporting to represent "CARRINGTON MORTGAGE SERVICES, LLC" mailed to Plaintiff an undated NOTICE OF SUBSTITUTE TRUSTEE SALE, sale date August 7, 2018 at 10:00 AM.

190. That NOTICE OF SUBSTITUTE TRUSTEE SALE stated:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR <u>REGISTERED HOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 is the current mortgagee of the note and Deed of Trust or Contract Lien.

...

CARRINGTON MORTGAGE SERVICES, LLC as Mortgage Servicer, is representing the Mortgagee, whose address is:

CARRINGTON MORTGAGE SERVICES, LLC
1600 SOUTH DOUGLAS ROAD SUITE 200-A
ANAHEIM, CA 92806

191. There is no comma after the word "TRUSTEE".

192. The entity "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR <u>REGISTERED HOLDERS</u> OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5" (with no comma) does not exist.

21

COMPLAINT

193. The name in the Notice of Substitute Trustee Sale, "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5" does not match the name on the Assignment, "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5".

194. The entity named in the Notice of Substitute Trustee Sale is not the same as the entity named in the Assignment.

195. The entity named in the Notice of Substitute Trustee Sale does not exist.

196. Therefore, the Notice of Substitute Trustee Sale is incorrect, fails to put anyone on notice of a sale, and is invalid and void.

197. THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR REGISTERED HOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 is not the current mortgagee of any note or Deed of Trust or Contract Lien encumbering Plaintiff's property.

198. Adequate time was not given, between the Appointment of Substitute Trustee and the sale date.

199. Adequate notice was not given of the Appointment of Substitute Trustee.

200. Adequate notice was not given of the sale date.

*THE STATEMENT FROM BANK OF AMERICA*

201. On September 1, 2014, Bank of America Home Loans mailed to Plaintiff a monthly statement which included the account number 116385085.

202. Plaintiff made payments to Bank of America Home Loans.

22

COMPLAINT

203. That account number does not match the Loan Number 828136127 on the Deed of Trust, or any other loan number.

204. Because of the incorrect account number, Plaintiff's payments were misapplied to the wrong account.

*THE LOAN MODIFICATION*

205. On 9/17/2015, a Loan Modification Agreement was recorded as 20150424703, loan number 828136127.

206. That loan number does not match the Loan Number 828136127 on the Deed of Trust.

207. Because of the incorrect loan number, Plaintiff's payments were misapplied to the wrong account.

208. The Loan Modification Agreement does not bear Plaintiff's signature.

209. The Loan Modification Agreement names Green Tree Servicing, LLC as "Lender."

210. The true name of Green Tree Servicing, LLC is DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC. (hereafter also called "Green Tree Servicing, LLC").

211. However, Green Tree Servicing, LLC did not lend any money to Plaintiff.

212. Green Tree Servicing, LLC is a servic

213. Green Tree Servicing, LLC is not a lender.

214. Green Tree Servicing, LLC is not a Regulated Lender.

215. Green Tree Servicing, LLC has no license to lend money.

216. Green Tree Servicing, LLC's General Ledger accounting entries will show that Green Tree Servicing, LLC did not lend any money to Plaintiff.

217. Green Tree Servicing, LLC did not lend any credit to Plaintiff.

218. Green Tree Servicing, LLC's General Ledger accounting entries will show that Green Tree Servicing, LLC did not lend any credit to Plaintiff.

23

COMPLAINT

Section 2

219. The Loan Modification states:

... this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. ...
I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

2. Acknowledgements and Preconditions to Modification. I understand and acknowledge that:

...
C. I understand that the Loan Documents will not be modified unless and until (l) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

...
J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

220. Plaintiff never received any signed copy of the Loan Modification Agreement.

221. Therefore, the Loan Modification Agreement never took effect.

222. The Lender's procedures may be found in documents in the possession of Defendant DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC.

223. The Lender's procedures required title insurance.

224. No title endorsement was ever issued.

225. No title insurance was ever issued.

24

COMPLAINT

226. Therefore, the Loan Modification Agreement was and is "null and void."

Sectic

227. The Loan Modification Agreement states in section 3:

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $289,350.48 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $144,675.24 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $144,675.24. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 08/01/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 09/01/2015. My payment schedule for the modified Loan is as follows:

228. This agreement is unconscionable because it is not understandable by the "least sophisticated consumer."

229. The Loan Modification was signed by "Jeff D. Koenig, Director of Default Services, License Number: 973833".

230. Jeffrey Dean Koenig has Arkansas NMLS License Number 973833.

231. Jeff D. Koenig has no Texas license.

*THE STATEMENTS FROM CARRINGTON*

232. On 6/18/2018, Carrington mailed a Statement to Plaintiff, attempting to collect an alleged debt in the amount of $30,625.05.

233. The Statement referred to a loan number 7000151621.

25

COMPLAINT

234. That loan number does not match the Loan Number 828136127 on the Deed of Trust.

235. Because of the incorrect loan number, Plaintiff's payments were misapplied to the wrong account.

236. Carrington is a "debt collector" subject to the FDCPA.

237. On 6/26/2018, Plaintiff mailed a letter to Carrington, disputing the alleged debt.

238. Carrington has not responded.

239. On each successive month, Carrington mailed another Statement to Plaintiff, attempting to collect the alleged debt.

### THE BANK OF NEW YORK MELLON IS NOT HOLDER IN DUE COURSE OF THE NOTE

240. There is no signature endorsing the Note from the original lender.

241. The Note when issued or negotiated to BNY CERTIFICATEHOLDERS bore such apparent evidence of forgery or alteration or was otherwise so irregular or incomplete as to call into question its authenticity.

242. The Note when issued or negotiated to BNY REGISTERED HOLDERS bore such apparent evidence of forgery or alteration or was otherwise so irregular or incomplete as to call into question its authenticity.

243. BNY CERTIFICATEHOLDERS did not take the Note for value.

244. BNY REGISTERED HOLDERS did not take the Note for value.

245. BNY CERTIFICATEHOLDERS did not take the Note in good faith.

246. BNY REGISTERED HOLDERS did not take the Note in good faith.

247. BNY CERTIFICATEHOLDERS did not take the Note without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series.

26

COMPLAINT

248. BNY <u>REGISTERED</u> HOLDERS did not take the Note without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series.

249. BNY <u>CERTIFICATEHOLDERS</u> did not take the Note without notice that the instrument contains an unauthorized signature or has been altered.

250. BNY <u>REGISTERED</u> HOLDERS did not take the Note without notice that the instrument contains an unauthorized signature or has been altered.

251. BNY <u>CERTIFICATEHOLDERS</u> did not take the Note without notice of any claim to the instrument described in UCC Section 3-306.

252. BNY <u>REGISTERED</u> HOLDERS did not take the Note without notice of any claim to the instrument described in UCC Section 3-306.

253. BNY <u>CERTIFICATEHOLDERS</u> did not take the Note without notice that any party has a defense or claim in recoupment described in UCC Section 3-305(a).

254. BNY <u>REGISTERED</u> HOLDERS did not take the Note without notice that any party has a defense or claim in recoupment described in UCC Section 3-305(a).

*VALIDITY OF FRAUDULENTLY CREATED DOCUMENTS*

255. Defendants produced fictitious documents. See *Transcript of the Meeting of the Task Force on Judicial Foreclosure Rules November 7, 2007*[9], which addresses the same fraudulent practices (Exhibit B).

256. On page 27, lines 6-22, Mr. Mike Barrett of Barrett Daffin Frappier Turner & Engel stated: "There really isn't such a document" during the discussion about verification of application documents.

257. On page 27, Lines 10-20, Mr. Barrett continued to state:

27

COMPLAINT

because the servicer usually acquired their position in the file through the purchase of MSRs. There is an organized market in MSRs that really makes up maybe as much as 40 to 50 percent of any mortgage company's assets, and they acquired this -- their status of being a servicer through the purchase of an MSR most of the time, or they did it themselves, they created their own loan. So finding a document that says, "I am the owner and holder, and I hereby grant to the servicer the right to foreclose in my name" is an impossibility in 90 percent of the cases."

258. On Page 28, lines 8-20, Honorable Judge Bruce Priddy stated:

And what the -- happens is they just execute a document like Mr. Barrett say doesn't exist. They just create one for the most part sometimes, and the servicer signs it themselves saying that it's been transferred to whatever entity they name as applicant.

259. On pages Page 25, lines 16-25, page 26, lines 1-15, Mr. Tommy Bastian of Barrett

Daffin Farppier Turner & Engle, LLP, explained MERS:

MERS is going to be the mortgagee of record in about 60 percent of all loans MERS is going to be the mortgagee of record, but all MERS is is a registration system. That's all it is. It really is a piggyback on what happened in the securities market back in the early Seventies when Wall Street was exploding, and back in those days whenever you bought and sold stocks or bonds you had to have a paper certificate. Well, the back rooms couldn't keep up with it, and Wall Street almost cratered, and they came up with a book-entry system that everybody is familiar with today where loans are bought and sold, and that's basically what MERS is. It's just a listing of who has all the beneficial ownership interest in a mortgage, and that's going to be the investor, it's going to be the mortgage servicer, it's going to be the subservicers. It gives you four or five, six pieces of corroborating information about the borrower and that particular loan. I mean, it has the detail on their status sheet that says, "This is when the loan was made, here is the borrower, and here's the amount of the loan." I mean, all that information is right there so that if the loan is registered on MERS it's real easy to determine all the different parties in the transaction, and that's the way the world's going, so maybe that's kind of the place we need to be going.

## FIRST CAUSE OF ACTION
(Quiet Title – Texas Property Code Section 5)
(Against All Defendants)[10]

---

[9] The transcript was once found on the Supreme Court of Texas website (http://www.supreme.courts.state.tx.us/jfrtf/pdf/110707transcript.pdf) however it is no longer there.
[10] A "suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." Gordon v. W. Hous. Trees, Ltd., 352 S.W.3d 32, 42 (Tex. App.—Houston [1st

28

COMPLAINT

260. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

261. The real property described above is not in the actual possession of any person other than plaintiff.

262. Plaintiff has an ownership interest in the real property described above under "PLAINTIFF". See above under "THE DEED TO PLAINTIFF."

263. Defendants are asserting a claim that affects Plaintiff's title to the real property described above.

264. Defendants' claim is invalid, unenforceable and without merit. Defendants have no estate, title, claim, lien, or interest in the real property or any portion thereof.

265. Plaintiff has no plain, speedy, or adequate remedy at law.

266. Plaintiff requests a quieting of title in Plaintiff's name.

### SECOND CAUSE OF ACTION
### (Request for Declaratory Relief - 28 U.S.C. §§ 2201-2202)
### (Against All Defendants)

267. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

268. There is a "justiciable controversy."

### Count I

269. MERS lacked authority to sign the Assignment (in its own capacity, not "as nominee") because MERS, in its own capacity, never held the Note nor owned the loan nor was beneficiary of the DOT.

---

Dist.] 2011, no pet.). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." Id. To establish that he "has a right of ownership and that the adverse claim is a cloud on the title that equity will remove," a plaintiff must show "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." Vernon v. Perrien, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied).

29

COMPLAINT

270.   Plaintiff is damaged as a result of MERS' signing the Assignment.

271.   Plaintiff requests that the Assignment be cancelled, set aside, vacated and declared void.

Count III   .

272. BNY <u>CERTIFICATEHOLDERS</u> does not have ownership or possession of any promissory note encumbering the Property, neither by itself nor through any agent, officer, employee or principal.

273. BNY <u>CERTIFICATEHOLDERS</u> is not the creditor of any loan encumbering the Property.

274. BNY <u>REGISTERED</u> HOLDERS does not have ownership or possession of any promissory note encumbering the Property, neither by itself nor through any agent, officer, employee or principal.

275. BNY <u>REGISTERED</u> HOLDERS is not the creditor of any loan encumbering the Property.

276. Plaintiff request a declaration that no Defendant is the owner or holder of any Note encumbering the Property; that no Defendant has any secured interest in Plaintiff's property; and that Plaintiff has no legal relationship with any Defendant; and that Plaintiff is the owner of the Property, and that the Note was not securitized, and that the debt is unsecured.

277. In the alternative and without waiving the foregoing, Plaintiff request a declaration that BNY <u>CERTIFICATEHOLDERS</u> and BNY <u>REGISTERED</u> HOLDERS are not protected by the Holder in Due Course Doctrine, for the following two reasons:

---

In <u>Taylor v. Brennan</u>, 621 S.W.2d 592 (Tex. 1981), the Texas Supreme Court explained, "Texas follows the lien theory of mortgages. Under this theory the mortgagee is not the owner of the property and is not entitled to its possession, rentals or profits."

30

COMPLAINT

278. The Bank of New York Mellon had notice: When mortgage backed securities were at their peak of popularity, a group of investors realized that many consumers were being approved for loans they did not have a dream of affording. These investors noticed that underwriting standards were ignored in order to package up and sell mortgage backed securities to unsuspecting investors. Borrowers were misled and lied to in order to lure them into these loans. Because of these realizations, a group of investors, including The Bank of New York Mellon, began to bet against the mortgage backed securities market by the use of credit default swaps - a kind of stock insurance that was issued even to non-stockholders.

279. The Bank of New York Mellon's use of these credit default swaps, along with ample other press related evidence, proves that The Bank of New York Mellon knew of the issues inherent in its acquisition of mortgages, including Plaintiff's mortgage.

280. Therefore, The Bank of New York Mellon had notice of the issues present in the mortgages it acquired, including Plaintiff's mortgage, and is, therefore, not a holder in due course.

281. Specifically, The Bank of New York Mellon had notice of all defenses to any, each and every Note encumbering the Property, including but not limited to: Fraud in the execution (this occurs when a person is deceived into signing a negotiable instrument believing that he is signing something other than a negotiable instrument); Material alteration; Breach of contract or breach of warranty; Lack or failure of consideration; Fraud in the inducement.

282. Improper Endorsement: If the Court disagrees with Plaintiff and believes The Bank of New York Mellon should continue to enjoy holder in due course status despite the notice of potential claims, Plaintiff additionally request that the Court require The Bank of New York Mellon to prove that the transfer and endorsement of the notes were proper before allowing them to enforce rights as the new holder of the notes.

31

COMPLAINT

283. It hardly seems just to allow The Bank of New York Mellon to take the benefits of both a negotiable and non-negotiable instrument. To allow The Bank of New York Mellon to circumvent the requirements of transfer and endorsement of negotiable instruments and enjoy holder in due course status would frustrate the laws.

284. The legislature has made a distinction in the treatment of negotiable and non-negotiable instruments purposefully. In order to protect makers of promissory notes from dual claims for payment, specific requirements are present for the transfer and endorsement of negotiable instruments that are not requirements of non-negotiable instruments.

285. To properly transfer a negotiable instrument, the physical Note must be transferred from the seller to the buyer (see supra). Furthermore, the Note must be indorsed to the transferee. This endorsement must be made on the Note if there is room. ORS 73.0204(1) provides, "for the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." Furthermore, the Court in <u>Pribus v. Bush</u>, 118 Cal. App. 3d 1003 decided that an allonge is not an effective indorsement when there is ample room for an indorsement on the note itself. Plaintiff alleges that any Note encumbering the Property neither has been properly endorsed nor transferred.

286. Holder in Due Course protection requires a negotiable instrument, transfer of the actual note, and proper endorsement of the note.

287. The Bank of New York Mellon is not an ordinary state-chartered private corporation, but a National Association, and therefore acts as an arm or agent of the United States government. Therefore, the Due Process required by the Constitution mandates a hearing before The Bank of New York Mellon may take Plaintiff's property by non-judicial foreclosure sale.

288. As a result, Plaintiff was damaged in an amount to be determined at trial.

Count IIII

32

COMPLAINT

289. Plaintiff has the right to prepay, subject to identification of the creditor.

290. As a result, Plaintiff was damaged in an amount to be determined at trial.

291. Judicial declarations are necessary and appropriate at this time and so that the Plaintiff may ascertain their rights and duties and avoid any illegal collection activity which might occur.

THIRD CAUSE OF ACTION
(Cancellation of Instrument)
(Against All Defendants)

292. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

293. No trust named THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

294. No trust named CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

295. No trust named REGISTERED HOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

296. No trust named THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

297. No trust named CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

298. No trust named CWABS, INC. exists.

299. The Deed of Trust conveyed title to a real trustee (L. B. HODGES) on behalf of a false beneficiary (MERS).

300. No affidavit to correct the Deed of Trust was ever offered.

301. The Assignment conveyed title to a real trustee (The Bank of New York Mellon) on behalf of a false beneficiary (THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5).

33

COMPLAINT

302. As a result, Plaintiff was damaged in an amount to be determined at trial.

303. Plaintiff requests cancellation of the Deed of Trust (Y586796), the Assignment of Deed of Trust (20110473774), the Loan Modification Agreement (20150424703), and the Appointment of Substitute Trustee (RP-2018-334398) and the NOTICE OF SUBSTITUTE TRUSTEE SALE (unknown recording number, if any).

### FOURTH CAUSE OF ACTION
### (Request for Equitable Accounting)
### (Against All Defendants)

304. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

305. Plaintiff does not owe the amount that Defendants have demanded.

306. As a result, Plaintiff was damaged in an amount to be determined at trial.

307. Plaintiff requests an equitable accounting.

### FIFTH CAUSE OF ACTION
### (Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692o)
### (Against Defendants Carrington, DITECH)

308. It has been said that "the activity of foreclosing on property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." See, Hulse v. Ocwen Federal Bank FSB, 195 F.Supp.2d 1188 (2002).

309. However, Hulse relied on Heinemann v. Jim Walter Homes, Inc., 47 F.Supp.2d 716 (D.W.Va.1998), aff'd, 173 F.3d 850 (4th Cir.1999), in which the key passage is:

> Although not expressly raised in this particular count, Plaintiff may be attempting to raise a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1601-1693r. However, the statute of limitations relating to violations of the FDCPA is one year. 15 U.S.C. § 1692k(d). As can be seen from the recitation of the undisputed facts, the only activity which occurred after April 17, 1997, was the corrected publication of the notice of sale and the final trustee's sale. Since the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA. See, 15 U.S.C. § 1692a(6).

34

COMPLAINT

310. It is apparent that the issue was not expressly raised by the <u>Heinemann</u> plaintiff and was not argued or litigated by the parties. Thus, it was not exposed to the crucible of opposing views and thorough airing of the issues by litigants with something at stake. Therefore, it should not be used as precedent.

311. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

312. Neither Carrington nor DITECH is a "mortgage company".

313. Defendant Carrington is a "debt collector" as defined by 15 U.S.C. § 1692a (6) and devote a substantial portion of its business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

314. Defendant DITECH is a "debt collector" as defined by 15 U.S.C. § 1692a (6) and devote a substantial portion of its business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

315. The debt alleged by Defendants, at issue in this litigation, is covered as a debt as defined 15 U.S.C. 1692a (5), since it was incurred for the personal, family or household purposes of the Plaintiff.

Count II

316. Defendant Carrington failed to send to Plaintiff, within five days after the initial communication, a written notice containing the information listed in 15 U.S.C. § 1692g(a).

317. As a result, Plaintiff was damaged in an amount to be determined at tr '

Count III

318. Defendant DITECH failed to send to Plaintiff, within five days after the initial communication, a written notice containing the information listed in 15 U.S.C. § 1692g(a).

319. As a result, Plaintiff was damaged in an amount to be determined at trial.

Count IIII

35

COMPLAINT

320. Plaintiff timely disputed all notices and claims of debt and demanded verification and validation.

321. Defendant Carrington continued debt collection attempts without verifying or validating the alleged debt, in violation of 15 U.S.C. § 1692g(b).

322. As a result, Plaintiff was damaged in an amount to be determined at tri

Count IV

323. Plaintiff timely disputed all notices and claims of debt and demanded verification and validation.

324. Defendant DITECH continued debt collection attempts without verifying or validating the alleged debt, in violation of 15 U.S.C. § 1692g(b).

325. As a result, Plaintiff was damaged in an amount to be determined at tri

SIXTH CAUSE OF ACTION
(RESPA - 12 U.S. C. § 2601 et seq.)
(Against Defendants Carrington, DITECH)

Count I

326. On November 3, 2017, Plaintiff mailed to DITECH a Qualified Written Request (QWR) under RESPA, requesting information about the servicing of the loan and asserting that DITECH had made an error about the amount due.

327. DITECH failed to respond.

328. As a result, Plaintiff was damaged in an amount to be determined at trial.

Count III

329. On 6/18/2018, Carrington mailed a Statement to Plaintiff, attempting to collect an alleged debt in the amount of $30,625.05.

36

COMPLAINT

330. On June 29, 2018, Plaintiff mailed to Carrington a Qualified Written Request (QWR) under RESPA, requesting information about the servicing of the loan and asserting that Carrington had made an error about the amount due.

331. Carrington failed to respond

332. As a result, Plaintiff was damaged in an amount to be determined at trial.

SEVENTH CAUSE OF ACTION
(Unconscionable Inducement - Clark v. DaimlerChrysler Corp., 268 Mich. App. 138, 143, 706 N.W.2d 471, 474 (2005); In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002))
(Against Defendant DITECH)

333. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

334. Defendant DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC procured an inflated appraisal.

335. The Loan Modification agreement is unconscionable because it is not understandable by the "least sophisticated consumer."

336. As a result, Plaintiff was damaged in an amount to be determined at trial.

EIGHTH CAUSE OF ACTION
(Dual Tracking - 12 U.S.C. § 2605(f))
(Against Defendants Carrington, DITECH)

337. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

338. Defendant Carrington Mortgage Services, LLC, while servicing a federally related mortgage loan, failed to notify Plaintiff in writing of an assignment, sale, or transfer of the servicing of the loan, and did not provide such notice at settlement.

339. Defendant DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING, LLC, while servicing a federally related mortgage loan, failed to notify Plaintiff in writing of an assignment, sale, or transfer of the servicing of the loan, and did not provide such notice at settlement.

COMPLAINT

340. The Loan Modification agreement is unconscionable because it is not understandable by the "least sophisticated consumer."

341. As a result, Plaintiff was damaged in an amount to be determined at trial.

PRAYER FOR RELIEF

342. Plaintiff prays this honorable Court take jurisdiction of this case.

343. Plaintiff prays for Decrees and Judgments as follows:

344. Enjoin, immediately, all Defendants, their agents, officers, employees and principals, during the pendency of this action, and permanently thereafter, from recording any deeds or mortgages regarding the Property; from selling, assigning or transferring mortgages, trust deeds or obligations relating to the Property; from instituting, prosecuting, or maintaining non-judicial or judicial foreclosure proceedings against the Property; from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiff; or from otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of the Property;

345. Award Plaintiff his costs and disbursements incurred herein.

346. On Plaintiff's First Claim (Quiet Title):

(a) Require defendant and all persons claiming under defendant to set forth the nature of their claims, if any, to the real property described in paragraph 1 herein;

(b) Determine all adverse claims, if any, of defendant and all persons claiming under defendant(s);

(c) Declare Plaintiff to be the owner in fee simple of the real property described above and entitled to possession thereof, free of any estate, title, claim, lien, or interest in the premises or any portion thereof, as of the date of filing of this Complaint.

(d) Enjoin defendant and those claiming under defendant from asserting any estate, title, claim, lien, or interest in the premises or any portion thereof;

38

COMPLAINT

(f) and a quieting of title in favor of Plaintiff.

347. On Plaintiff's Second Claim (Declaratory Judgment): Plaintiff requests a declaratory judgment that no Defendant is the owner or holder of any Note encumbering the Property; that no Defendant has any secured interest in Plaintiff's property; and that Plaintiff has no legal relationship with any Defendant; and that Plaintiff is the owner of the Property, and that the Note was not securitized, and that the debt is unsecured; that the Assignment is void; that BNY CERTIFICATEHOLDERS and BNY REGISTERED HOLDERS are not protected by the Holder in Due Course Doctrine; and that Plaintiff has the right to prepay, subject to identification of the creditor.

348. On Plaintiff's Third Claim (Cancellation of Instrument): Cancel, vacate and set aside the Deed of Trust (Y586796), the Assignment of Deed of Trust (20110473774), the Loan Modification Agreement (20150424703), and the Appointment of Substitute Trustee (RP-2018-334398) and the NOTICE OF SUBSTITUTE TRUSTEE SALE (unknown recording number, if any).

349. On Plaintiff's Fourth Claim (Equitable Accounting): Order Defendants to provide an equitable accounting.

350. On Plaintiff's Sixth Claim (FDCPA): such relief as the Court deems just and proper.

351. On Plaintiff's Seventh Claim (Unconscionable Inducement): such relief as the Court deems just and proper.

352. On Plaintiff's Eighth Claim (Dual Tracking): such relief as the Court deems just and proper.

Executed on: October 15, 2018

/s/ _____
Antwan Henry, Plaintiff

39

COMPLAINT

p.5

EXHIBIT   A

Unofficial Copy Office of Chris Daniel District Clerk



Texas American Title Company
Title Information Center
2000 Bering Drive, Suite 1000
Houston, Texas 77057
Ph: 713-244-2867, Fax: 713-244-2872

# NOTHING FURTHER CERTIFICATE

### (Delivered subject to the terms in the Notice below)

GF Number: 2791018-13612
DATE: August 2, 2018

Pursuant to your request we have researched the records of the county clerk and district clerk of Harris County, Texas, for the real property described above, after July 5, 2005 up to July 29, 2018 8:00 a.m., and find only following described documents filed for record:

### Record Title Appears To Be Vested In:

Antwan Henry, a single person (by that certain Warranty Deed filed for record under Harris County Clerk's File No. Y586795). (Subject to: The terms, conditions and stipulation set out on that certain General Warranty Deed Subject to Condition Precedent, as set forth and defined by instrument filed for record under Harris County Clerk's File No. 20080606383).

### Lien Holder(s):

The Bank of New York Mellon FKA The Bank of new York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-5 (by that certain Deed of Trust filed for record under Harris County Clerk's File No. Y586796 and assignment filed for record under H.C.C.F.N. 20110473774).

### Legal Description:

Lot One (1), in Block Two (2), of Canyon Gate at Northpointe, Section Two (2), a Subdivision in Harris County, Texas according to the map or plat thereof, recorded in Film Code No. 404083, of the Map Records of Harris County, Texas.

### Other documents:

Notice – Y586798
Notice – Y586799
Release – 20120504433
Modification – 20150424703
Appointment – RP-2018-334398

We have searched the name of Antwan Henry, for outstanding federal and/or state tax liens and/or abstracts of judgments and/or bankruptcies and found the following:

Bankruptcy – 201530225, 01/06/2015, Chapter 13, SSN: XXX-XX-X520

GF#: _05123923_

# GENERAL WARRANTY DEED WITH VENDOR'S LIEN
### (AND WITH SUBORDINATE VENDOR'S LIEN)

STEWART TITLE-HOUSTON DIVISION

Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your Social Security Number or Your Driver's License Number.      07/05/05   10:22:51:51      018.09

THE STATE OF TEXAS

COUNTY OF HARRIS

KNOW ALL MEN BY THESE PRESENTS:

THAT ROYCE MODEL HOMES, L.P. , hereinafter called "GRANTOR" (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash and other good and valuable consideration to GRANTOR in hand paid by, ANTWAN HENRY, A SINGLE PERSON , whose mailing address is 11323 CANYON VALLEY DRIVE, TOMBALL, TEXAS 77377, hereinafter called "GRANTEE" (whether one or more), the receipt and sufficiency of which are hereby acknowledged, and for the further consideration of the sum paid to GRANTOR by GRANTEE, the receipt and sufficiency of which sum, being in the amount of $137,292.00, is hereby acknowledged and confessed; and as evidence of such advancement, GRANTEE has executed GRANTEE'S note of even date herewith for such amount payable to the order of FIRST-LIEN BENEFICIARY, said note payable as provided therein; and the payment of said note is secured by a vendor's lien reserved herein and is additionally secured by a deed of trust of even date with said note, executed by GRANTEE to L. B. HODGES , TRUSTEE, reference to which deed of trust is hereby made for all purposes; and in consideration of the payment by FIRST-LIEN BENEFICIARY of the sum specified in said deed of trust, GRANTOR hereby transfers, sets over, assigns, and conveys unto FIRST-LIEN BENEFICIARY and its assigns a vendor's lien and superior title retained and reserved herein against the property and premises conveyed herein in the same manner and to the same extent as if said notes had been executed in GRANTOR'S favor and assigned by GRANTOR to FIRST-LIEN BENEFICIARY without recourse; and GRANTOR has GRANTED, SOLD, and CONVEYED, and by these presents does GRANT, SELL, and CONVEY unto said GRANTEE, the following described real property, to-wit:

LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 484083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

TO HAVE AND TO HOLD the above-described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said GRANTEE and GRANTEE'S heirs and assigns forever. GRANTOR does hereby bind GRANTOR and GRANTOR'S heirs, executors, and administrators to warrant and forever defend, all and singular, the said premises unto the said GRANTEE and GRANTEE'S heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Taxes of every nature for the current year have been prorated and are assumed by GRANTEE. This conveyance is made subject to, all and singular, the restrictions, mineral reservations, royalties, easements, and covenants, if any, applicable to and enforceable against the above-described property as reflected by the records of the County Clerk of the aforesaid County.

GRANTOR and GRANTEE also acknowledge the retention of a second, subordinate and separate vendor's lien, and GRANTOR hereby transfers the same to MILESTONE MORTGAGE CORPORATION, hereinafter called "SECOND-LIEN BENEFICIARY", which lien secures GRANTEE'S certain other note of even date to SECOND-LIEN BENEFICIARY in the amount of $61,800.00, being further consideration paid to GRANTOR, as more particularly described in deed of trust of even date herewith to L.B. HODGES, TRUSTEE. But it is expressly agreed and stipulated that the vendor's lien and superior title are retained in favor of the FIRST-LIEN BENEFICIARY and SECOND-LIEN BENEFICIARY, respectively, against the above described property, premises and improvements, until each of the above respective notes is fully paid according to its terms, when this deed shall become absolute.

When this deed is executed by more than one person, or when the GRANTOR or GRANTEE is more than one person, this instrument shall read as though pertinent verbs, nouns and pronouns were changed to correspond, and when executed by or to a corporation, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns."

EXECUTED this _29TH_ day of _JUNE_ _____ , _2005_ .

FILED
05 JUL -5 PM 12:34
COUNTY CLERK
HARRIS COUNTY, TEXAS

ROYCE MODEL HOMES, L.P.

BY: _Kathy Kraner_

PRINTED NAME: _Kathy Kraner_

ITS: _Asst. Secretary_

THE STATE OF TEXAS }
COUNTY OF                                                    (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by _____

_____                          _____
My commission expires               Notary Public, State of
                                    Printed Name:

THE STATE OF TEXAS }
COUNTY OF                                                    (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by _____

_____                          _____
My commission expires               Notary Public, State of
                                    Printed Name:

THE STATE OF TEXAS }
COUNTY OF                                                    (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by _____

_____                          _____
My commission expires               Notary Public, State of
                                    Printed Name:

THE STATE OF TEXAS }
COUNTY OF                                                    (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by _____

_____                          _____
My commission expires               Notary Public, State of
                                    Printed Name:

THE STATE OF TEXAS }
COUNTY OF                                          (Corporate/Entity Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by _____
of  ROYCE MODEL HOMES, L.P.
a _____ on behalf of said _____,

_____                          _____
My commission expires               Notary Public, State of
                                    Printed Name:

AFTER RECORDING RETURN TO:

ANTWAN HENRY
11369 CANYON VALLEY DRIVE
TOMBALL, TEXAS 77377

Re: 11369 CANYON VALLEY DRIVE TOMBALL TEXAS 77377

Unofficial Copy Office of Chris Daniel District Clerk

## CORPORATE ACKNOWLEDGEMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on this __29th__ day of _____June_____, 2005, by KATHY KRAMER, ASSISTANT SECRETARY of Hammersmith Group, Inc., a Delaware corporation and general partner of Royce Homes, L.P., a Delaware limited partnership, on behalf of said corporation in its capacity therein stated.

_Elaine F. Thompson_
Notary Public in and for
The State of Texas

ELAINE F. THOMPSON
MY COMMISSION EXPIRES
February 22, 2009

Unofficial Copy Office of Chris Daniel District

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

JUL - 5 2005



_Beverly B. Kaufman_
COUNTY CLERK
HARRIS COUNTY, TEXAS

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

P. 27

EXHIBIT  B

Unofficial Copy Office of Chris Daniel District Clerk