## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Antwan Henry | § | |
| v. | § | 4:18-cv-04414 |
| Carrington Mortgage Services, LLC, et al. | § | |

### DISMISSAL MOTION

Antwan Henry has used years of delay tactics to avoid repaying his debts.  This lawsuit is another example of that pattern and the court should dismiss his frivolous claims under Rule 12(c).

## I.   BACKGROUND & ALLEGATIONS

**A.  The loan, lien and property at issue.**

Mr. Henry received a $167,200.00 loan from Network Funding, L.P. on June 27, 2005. (Ex. 1, note.)  He used the money to purchase real property at 11939 Canyon Valley Drive in Tomball.  (Ex. 2, deed of trust at 2 (address), 11 (purchase money).)  He acquired title to the property by a general warranty deed.  (Ex. 3.)  The deed recites title was conveyed "for the further consideration of the sum paid to GRANTOR by Network Funding, L.P., . . . being in the amount $167,200.00" and reflects Mr. Henry "has executed [Mr. Henry's] note of even date herewith for such amount pay able to the order of [Network Funding, L.P.]"  (Ex. 3 at 1.)

Mr. Henry secured his promise to repay the loan with interest by granting a lien on the property with a power of sale.  (Ex. 2 at 2 ("This Security Instrument secures to the Lender . . . repayment of the Loan"), 10 (power of sale).)  The beneficiary of the security instrument was Mortgage Electronic Registration Systems, Inc. (**MERS**).  (Ex. 2 at 1.)  The deed of trust originally reflected a Mortgage Identification Number missing a digit in a series of zeros.  (Ex. 2 at 1 ("MIN: 1001504-060590**0**071-6") (emphases added).)  The scrivener's error was corrected via affidavit recorded in the property records.  (Ex. 4, mortgagee's aff. ¶ 4 ("1001504-0605900**0**071-6") (emphasis added); *see also* EX. 5, ltd. irrevocable power of att'y.)  MERS assigned its interest under

the security instrument on November 4, 2011 to The Bank of New York Mellon, as trustee for the certificateholders of the CWABS, Inc., asset-backed certificates, series 2006-5 (**BoNYM**).  (EX. 6, assignment of deed of trust.)

**B.  Mr. Henry's many strategies to avoid repaying his debts.**

Mr. Henry filed a suit in this court on November 26, 2014 to delay foreclosure.  *Henry v. Bank of Am., N.A.*, No. 4:14-cv-2497.  The more than 300 paragraphs in his amended complaint track closely the frivolous allegations in his current suit.  (*See* EX. 7, am. compl.)  Mr. Henry nonsuited after this court denied his demand for temporary injunctive relief blocking foreclosure. (EXS. 8 (mem. op. & order), 9 (nonsuit), 10 (order).)

Loan servicing transferred to Green Tree Servicing LLC effective September 14, 2014. (*See* EX. 11, loan modification agreement at 1 "Lender . . . : Green Tree Servicing LLC").)  Mr. Henry was in default.  (Ex. 11 ¶ 1.A ("I am in default").)  He delayed his creditors by filing for bankruptcy protection under chapter thirteen on January 6, 2015 in the Southern District of Texas. (Ex. 12, voluntary pet.).  The court dismissed the proceeding sixteen days later because he failed to comply with basic requirements like filing his schedules.  (Ex. 13, order.)

Green Tree and Mr. Henry agreed to modify the loan effective September 1, 2015.  (Ex. 11 ¶ 3; *see also* doc. 1-1 at 28, pl.'s original pet. ¶ 205.)  Mr. Henry received a series of benefits under the modification agreement, including converting half of the unpaid balance to noninterest bearing and two percent interest on the other half for a five year period followed by modest increases up to four percent.  (Ex. 11 ¶ 3.C.)  The parties recorded this modification agreement in the Harris County real property records.  (Ex. 11 at 10.)

Servicing transferred from Green Tree's successor entity, Ditech, to Carrington effective August 16, 2017.  Mr. Henry defaulted again, and again filed for bankruptcy protection under

chapter thirteen on August 6, 2018 to delay his creditors.  (Ex. 14, voluntary pet.)  He again failed to file basic documents such as his schedules and again the court dismissed his frivolous petition. (Ex. 15, order.)  When Carrington moved to enforce the lien, he filed this suit in October.

**C.  Mr. Henry filed this suit as yet another frivolous attempt to delay his creditors.**

For the fourth time in as many years, Mr. Henry resorted to litigation in lieu of repaying his debts.  His petition is a mélange of demonstrably false statements, conclusory assertions and legal theories recycled fruitlessly by debtors seeking to avoid mortgagees' enforcement of liens. (*See generally*, docs. 1-1 at 6 through 1-2 at 34, pet.)

**1.  Mr. Henry denies the loan exists and makes other demonstrably false assertions.**

Mr. Henry begins his petition by asserting he "never borrowed money in a loan secured by the property." (Pet. ¶ 2.)  He simultaneously characterizes his claim to title as dependent on the same general warranty deed (pet. ¶¶ 46-47) explicitly reciting he received title in consideration for the proceeds of the loan (Ex. 3 at 1).  He asserts without pleading any facts in support that "Carrington claims to be the loan servicer . . . [but] is not the loan servicer of any loan encumbering Plaintiff's property." (Pet. ¶¶ 5-6.)  He makes irrelevant statements about whether Carrington and BoNYM recorded a power of attorney agreement.  (Pet. ¶¶ 9, 12.)  He also implies without explanation there is some meaningful distinction between the registered holders of a security and the certificateholders of a security.  (Pet. ¶¶ 9-12.)  He makes the meaningless assertion BoNYM "is not owner and holder of a Note encumbering the Property."  (Pet. ¶¶ 17-18.)  He contends BoNYM is not the mortgagee of the security instrument (pet. ¶ 19) despite it being the last assignee of record and therefore mortgagee of the instrument by definition.  (Ex. 6; *see* Tex. Prop. Code § 51.0001(4)(C) ("'Mortgagee means: . . . if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.")  Contrary to his assertion he "never borrowed money in a loan secured by the property," Mr. Henry makes the bizarre

assertion BoNYM "took the Note with notice that it is in default" and "knowingly put itself in harm's way."  (Pet. ¶¶ 20, 26.)  Even if this were somehow relevant to his claims, the property record reflects Mr. Henry cured any default existing prior to 2015 by agreeing to the loan modification in 2015, four years after BoNYM became the mortgagee.  (*See* EXS. 6, 11.)

### 2.  Mr. Henry's discredited theories and conclusory, irrelevant assertions.

Mr. Henry's 352 paragraph petition is a litany of discredited legal theories typical of pro se litigants seeking to avoid repaying their debts.  He asserts the hold-the-note and split-the-note theories.  (*See e.g.*, pet. ¶ 86 ("No Defendant holds the note and the mortgage."); *see also* pet. ¶¶ 240-54).)  He claims the lien is invalid because the loan was improperly securitized; even if this were plausible his allegations in this regard are inscrutable.  (*See, e.g.*, pet. ¶ 99 ("The mortgage originator, although designated as 'lender' or even 'beneficiary' is not the creditor even for a hypothetical instant in time.").)  He contends he is entitled to a free house because he did not consent to electronic transfer of documents.  (*See* pet. ¶¶ 111-13.)  He asserts "[t]here is not an unbroken chain of transfers of the mortgage note from the originator to the trust" (pet. ¶ 114; *see* pet. ¶¶ 114-27) despite enforcement of the lien relying on the security instrument—not the note— and the property record demonstrating a single assignment from the original beneficiary conveyed the security instrument to BoNYM (EX. 6).  (*See also* EX. 1 at 3-4 (indorsements from the original lender Network Funding, L.P. to Milestone Mortgage Corporation, from that entity to Countrywide Bank, N.A., from that entity to Countrywide Home Loans, Inc., from that entity to blank).)

Mr. Henry attacks the validity of the assignment largely by reciting a cascade of conclusory statements with no facts pled in support.  (*See generally* pet. ¶¶ 128-71.)  He asserts the presence or lack of a comma when identifying BoNYM's interest means his lien is no longer valid (pet. ¶¶ 130-31), and he returns to the distinction without a difference between the certificateholders

and registered holders of a security (*see, e.g.*, pet. ¶¶ 135-37).  He asserts MERS lacked the ability to assign security instruments in Texas (*see generally* pet. ¶¶ 139-45) despite MERS's authority to do so being a well litigated and repeatedly settled issue.  Among his stew of conclusory assertions is various individuals lacked authority to execute documents, again failing to plead any specific facts from which to conclude his assertions are plausible.  (*See generally* pet. ¶¶ 146-57.)  Mr. Henry also fails to plead any basis from which to conclude he has standing to contest an assignment between MERS and BoNYM or the securitization of the loan.

Mr. Henry attacks the validity of various appointments of substitute trustee.  (*See generally* pet. ¶¶ 172-204.)  None of these assertions are relevant because it is undisputed no sale occurred.

Mr. Henry acknowledges the 2015 loan modification (pet. ¶ 205) but his allegations with regard to the loan modification mirror those regarding other referenced documents, including strange characterizations of Green Tree as "not a lender," "not a Regulated Lender," and having "no license to lend money."  (*See, e.g.*, pet. ¶¶ 212-15.)  He complains he allegedly did not receive a copy of the agreement despite the fact it is a public record available to everyone for free. (Ex. 11.)  He makes several assertions not relevant to the validity of the modification, still without pleading any facts in support, such as no title insurance allegedly issued with the modification (pet. ¶¶ 223-25) and the countersigner allegedly lacks an unspecified "Texas license" (pet. ¶¶ 229-31).

Mr. Henry's only allegations against Carrington inexplicably complain about assigning new loan numbers following a service transfer (pet. ¶ 233-34), then repeat the petition's same conclusory, fact-deficient accusations.  (*See, e.g.*, ¶ 235 (unspecified "payments were misapplied" in an unspecified fashion), ¶¶ 237-38 (Mr. Henry mailed a letter Carrington did not respond to).)

## II. ARGUMENT & AUTHORITIES

**A.  The legal standard for this motion.**

A motion brought pursuant to Rule 12(c) should be granted if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).  A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim.  *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010).

The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L. Ed. 2d 1 (2002).  To avoid dismissal a plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  Plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation marks omitted).  The court will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).  "[D]ismissal is proper if the complaint lacks an allegation regarding a

required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

When considering a motion to dismiss courts are generally "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  In addition, "the court may take judicial notice of matters of public record." *See Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. App'x 173, 178 (5th Cir. 2012).

While courts liberally construe pro se complaints, "pro se status does not provide 'an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Burroughs v. Shared Hous. Ctr.*, No. 3:15-CV-333, 2015 WL 4077216, at *4 (N.D. Tex. June 17, 2015).  A party proceeding pro se must still allege facts to state a plausible claim.  *See Florance v. Bunchmeyer*, 500 F. Supp. 2d 618, 634 (N.D. Tex. 2007) ("regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-plead facts, not mere conclusory allegations to avoid dismissal.").

### III. ARGUMENT & AUTHORITIES

### A.  Many of Mr. Henry's themes regarding the documents' invalidity are frivolous.

The court should "view with suspicion and distrust" Mr. Henry's conclusory assertions facially valid documents in the property record are defective. *Van Duzer v. U.S. Bank, N.A.*, 995 F. Supp. 2d 673, 688 (S.D. Tex. 2014) (Lake, J.).  Mr. Henry's blanket assertions are far short of pleading facts in a "clear, cogent, and convincing" manner in order to overcome the presumption of validity due real property records.  *Id.*

Mr. Henry's attacks on MERS's authority to assign the deed of trust fails as a matter of law. The Fifth Circuit held MERS "qualifies as a mortgagee" under Texas law.  *Martins v. BAC Home Loans Servicing, LP*, 722 F.3d 249, 255 (5th Cir. 2013).   "Courts in the Fifth Circuit have repeatedly upheld MERS' assignment of mortgages to other entities." *Khan v. Wells Fargo Bank, N.A.*, No. H-12-1116, 2014 WL 200492, at *9 (S.D. Tex. Jan. 17, 2014).   MERS is named beneficiary and "nominee for Lender and Lender's successors and assigns" in the security instrument.  (Ex. 2 at 2.)

Mr. Henry lacks standing to challenge the assignment, *see Van Duzer*, 995 F. Supp. 2d at 689-90, or the securitization of the debt.  *See Herrera v. Wells Fargo Bank, N.A.*, No. H-13-68, 2013 WL 961511, at *8-9 (S.D. Tex. June 20, 2013) (holding plaintiff's lack of standing to contest an assignment reflects "[t]he same principle vitiat[ing] [plaintiff's] challenge that [mortgagee] violated the rules and regulations of the PSA in securitizing his mortgage").

## B.  The court should dismiss Mr. Henry's quiet title claim.

Mr. Henry pleads his basis for claiming title to the property is a general warranty deed (pet. ¶¶ 46-47) explicitly reciting he received title in consideration for the proceeds of the loan (EX. 3 at 1).  The court should disregard his assertions regarding having "never borrowed money in a loan secured by the Property" (pet. ¶ 2) as not plausible under the facts he pleads.  His only basis for the quiet title claim is defendants' allegedly inferior title.  (*See* pet. ¶ 264 ("Defendants' claim is invalid, unenforceable and without merit.  Defendants have no estate, title, claim, lien, or interest in the real property or any portion thereof.").)  Such a claim must be dismissed.  *See Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.) ("A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not on the weakness of his

adversary's title."); *see also Van Duzer*, 995 F. Supp. 2d at 695-96 (concluding quiet title claim must fail where based on invalid challenges to an assignment).

## C.  Mr. Henry's demands for declaratory relief are groundless.

Despite Mr. Henry's repeated reference to the note, there is no requirement a mortgagee hold the note in order to enforce its rights under a security instrument.  (*See, e.g.*, pet. ¶ 269 ("MERS lacked authority to sign the Assignment . . . because MERS . . . never held the Note"); ¶¶ 272, 274 (alleging BoNYM "does not have ownership or possession of any promissory note encumbering the Property"); ¶ 276 ("Plaintiff request[s] a declaration that no Defendant is the owner or holder of any Note encumbering the Property . . . and that the debt is unsecured").)  Texas Property Code chapter 51 authorizes a "mortgagee" to enforce a security instrument through a non-judicial foreclosure sale, either directly or through a mortgage servicer.  *See* § 51.0025 ("A mortgage servicer may administer the foreclosure of property under section 51.002 on behalf of a mortgagee if . . .").  A "mortgagee" is defined in a number of different ways, including "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  *See* § 51.0001(4)(c).  Nothing in the language of chapter 51 requires a mortgagee or mortgage servicer be the holder (or even owner) of the promissory note to exercise the power of sale in a deed of trust.  BoNYM is the mortgagee as the last assignee.  (Ex. 6.)  State and federal courts have consistently rejected Mr. Henry's theory.  *See, e.g.*, *Martins*, 722 F.3d at 254-55 ("the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure"); *Van Duzer*, 995 F. Supp. 2d at 688 (observing under Texas law the beneficiary of the lien can be different from the holder of the note and the party to foreclose need not possess the note).  Mr. Henry agreed MERS was the beneficiary when he signed the deed of

trust (EX. 2 at 1), and it assigned its rights to BoNYM (EX. 6).  Nothing he alleges plausibly puts the validity of the assignment in question.

None of Mr. Henry's general allegations regarding mortgage backed securities and credit default swaps (*see* pet. ¶¶ 277-81) contain specific allegations regarding the loan, the lien or the property.  *See Herrera*, 2013 WL 961511, at *8-9.  And his paragraphs entitled improper indorsement are similarly vague, conclusory discussions lacking specific allegations of fact and misrepresenting general statements of law.  (*E.g.* pet. ¶ 287 (contending national banking associations "act[] as an arm or agent of the United States government").  His third "count" for declaratory relief is also meritless because he demands the court declare he "has the right to prepay" the loan when that is not in dispute.  (*See* EX. 1 ¶ 5 (borrower's right to prepay).)

**D.  Mr. Henry's claim regarding BoNYM's beneficiary is disproven by the public record.**

Mr. Henry's "third cause of action" is a series of conclusory assertions to the effect that CWABS Asset-Backed Certificates Trust 2006-5 does not exist.  (*See* pet. ¶¶ 293-301.)  He fails to plead facts from which to conclude his assertion might be plausible or how he has standing to challenge securitization.  *See Herrera*, 2013 WL 961511, at *8-9.  The public record including Securities and Exchange Commission filings establish its existence.  (*See, e.g.*, CWABS Asset-Backed Certificates Trust 2006-5, Annual Report (Form 10-K) (Mar. 27, 2007), https://www.sec.gov/Archives/edgar/data/1354827/000090514807002706/efc70808_6058375fm10k.txt.).

**E.  Mr. Henry is not entitled to an accounting.**

Mr. Henry's request for an accounting should be denied because there is no unusual circumstance warranting it.  Although a trial court has discretion when to order an accounting, it should only do so when the facts and accounts in issue are so complex that adequate relief cannot be obtained at law.  *See Wigginton v. The Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071 at *4 (N.D. Tex. July 7, 2011) (citing *T.F.W. Mgmt., Inc. v. Westwood Shores Prop.*

*Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)).  Mr. Henry has not alleged any fact from which to conclude there is any basis for an accounting, nor has he alleged facts sufficient to justify the court using its equity powers to provide him the information he could obtain by ordinary means at law.

## F.  Mr. Henry failed to plead a valid FDCPA claim.

Mr. Henry's FDCPA allegations are merely him pointing to portions of the statute and asserting defendants are liable.  (*See* pet. ¶¶ 316-25.)  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678; *see Gaviola v. JP Morgan Chase Bank, N.A.*, No. H-16-0725, 2016 WL 3552309, at *4 (S.D. Tex. June 23, 2016) (Lake, J.) (conclusory assertions of FDCPA liability insufficient to satisfy Rule 8); *see also Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("The activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA."), *aff'd*, 269 Fed. App'x 523 (5th Cir. 2008).

If Mr. Henry is correct that he "is not in default on any loan encumbering the Property" (pet. ¶ 87) then he has not pled facts from which to conclude defendants are "debt collectors" under the Fair Debt Collection Practices Act.  "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Rice v. JPMorgan Chase Bank, N.A.*, No. H-15-0416, 2015 WL 4112287, at *4 (S.D. Tex. July 7, 2015) (Lake, J.)  Without pleading sufficient facts in support, Mr. Henry's allegations fail to raise a reasonable inference that defendants were debt collectors for purposes of the FDCPA.

Mr. Henry pleads he owns the property but he does not state he occupies it as his personal residence.  (*See* pet. ¶ 1.)  FDCPA defines "debt" as "any obligation or alleged obligation of a

consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."  15 U.S.C. § 1692a(5).  The Harris County Appraisal District's records reflect no homestead exemption.  (*See* Ex. 16, "Exemption Type **None**" (emphasis in original).)

**G.  Mr. Henry's assertion of defendants' liability for QWR responses is insufficiently pled.**

Mr. Henry alleges he "mailed to [Ditech and Carrington] a Qualified Written Request (QWR) under RESPA, requesting information about the servicing of the loan and asserting that [the defendant] had made an error about the amount due" and the "[defendant] failed to respond." (Pet. ¶¶ 326, 330.)  This does not set out the bare minimum of a potentially actionable claim.

Mr. Henry does not plead facts from which to conclude he included in his correspondence information that "enables the servicer to identify the name and account of the borrower." 12 U.S.C. § 2605(e)(B)(i).  He does not plead facts from which to conclude his correspondence included "sufficient detail to the servicer regarding . . . information sought by the borrower." § 2605(e)(B)(ii).  Mr. Henry does not plead facts from which to conclude he suffered actual damages, § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for . . . any actual damages to the borrower as a result of the failure"), or a factual basis to conclude he may be entitled to statutory damages for a pattern or practice of noncompliance (§ 2605(f)(1)(B) ("damages, as the court may allow, in the case of a pattern or practice of noncompliance")).  *See also Gipson v. Deutsche Bank Nat'l Trust Co.*, No. 3:13-CV-4820-L (BH), 2015 WL 11120538, *24-25 (N.D. Tex. Oct. 27, 2015) ("Although Plaintiff seeks actual damages as a result of 'Defendant's' purported failure to issue notice, he does not explain what actual damages he suffered.  Nor does he state that Moving Defendants engaged in a 'pattern or practice of noncompliance,' thereby subjecting them to statutory damages . . . . His RESPA

claim should therefore be dismissed.").  He does not plead he sent his correspondence to the servicers' designated address for requests for information.  *See* 12 C.F.R. § 1024.36(b).  He does not describe the manner of his correspondence.  *See, e.g.*, § 1024.36(a) ("A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information.").  Without pleading some detail regarding his request for information it is not plausible to conclude defendants were obligated to respond substantively to the request.  *See, e.g.*, § 1024.36(f) (addressing requests that are duplicative, irrelevant, overbroad, unduly burdensome, untimely or demanding confidential, proprietary or privileged information).

### H.  Mr. Henry's "dual tracking" claim is not actionable.

Mr. Henry alleges Carrington "failed to notify Plaintiff in writing of an assignment, sale, or transfer of the servicing of the loan, and did not provide such notice at settlement." (Pet. ¶ 338.)  Such a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.  Mr. Henry cites section 2605(f), but that section does not address liability for these allegations.  Pursuant to section 2605(b)(1) "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan."  Like his allegations with respect to QWRs, to recover under this portion of RESPA Mr. Henry must allege actual damages resulting from the alleged RESPA violation.  *See supra* § III.G; *see also Gipson*, 2015 WL 11120538, *24-25.  To the extent Mr. Henry alleges a RESPA violation at origination those claims are barred by the statute of limitations.  *See Gipson*, 2015 WL 11120538, *25.

### IV. CONCLUSION

The court should dismiss Mr. Henry's claims with prejudice.

Date: December 10, 2018                    Respectfully submitted,

    *s/ Walter McInnis*
C. Charles Townsend – Of Counsel
SBN: 24028053; So. Dist. Bar No. 1018722
Walter McInnis – Attorney in charge
SBN: 24046394; So. Dist. Bar No. 588724
Ginny E. Webb – Of Counsel
SBN: 24047462; So. Dist. Bar No. 1111061
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile:  214.981.9339
charles.townsend@akerman.com
walter.mcinnis@akerman.com
ginny.webb@akerman.com

**ATTORNEYS FOR CARRINGTON
MORTGAGE SERVICES, LLC & THE BANK
OF NEW YORK MELLON, AS TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I certify I served this on December 10, 2018 as follows:

| | |
|---|---|
| <u>Via Regular U.S. Mail</u><br><u>and Certified Mail / RRR</u><br><u>No.  9414 7266 9904 2124 3119 13</u><br>Antwan Henry<br>11939 Canyon Valley Drive<br>Tomball, Texas 77377-7636<br><br>*Pro Se Plaintiff* | <u>Via CM/ECF</u><br>S. David Smith<br>Melissa S. Gutierrez<br>Bradley Arant Boult Cummings LLP<br>600 Travis Street, Ste. 4800<br>Houston, Texas 77002<br>sdsmith@bradley.com<br>mgutierrez@bradley.com<br><br>*Counsel for Defendant Ditech Financial LLC* |

    *s/ Walter McInnis*
Walter McInnis

# EXHIBIT 1

Loan Number ▮▮0158
MIN 1001504-060590071-6
MERS Phone: 1-888-679-6377

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JUNE 27 | , 2005 | HOUSTON | , TEXAS |
|---|---|---|---|
| [Date] | | [City] | [State] |

11939 CANYON VALLEY DRIVE, TOMBALL, TEXAS 77377
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$167,200.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **NETWORK FUNDING, L.P.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.800%**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **AUGUST 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JULY 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **9700 RICHMOND AVENUE, HOUSTON, TEXAS  77042** or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$1,203.62**. This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the **1ST** day of **JULY, 2008**, and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN AND 30/100THS** percentage point(s) (**7.300%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.800%** or less than **7.800%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND ONE-HALF** percentage point(s) (**1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.800%**.

#### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Borrower Initials _____ _____

MULTISTATE ADJUSTABL▮ ▮▮▮▮▮MENT (MODIFIED) Form 3590 1/01 *(page 1 of 3 pages)*

610   5085   N   001   001

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under the Note. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payment after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If, within the first 36 month(s) of the date of the Note I/we make full Prepayment, or partial Prepayment in any 12 month period therein of more than 20% of the original Principal, the Note Holder may collect a penalty. That penalty will be equal to six months interest at the yearly rate of interest at the time the Prepayment is made, on the amount of the Prepayment which is more than 20% of the original Principal, unless otherwise prohibited by applicable law or regulation. If I/we make a partial Prepayment, there will be no delays in the due dates or changes in the amount of my monthly payment unless the Note Holder agrees in writing to those delays or changes. The penalty will be collected upon full Prepayment, unless otherwise provided by applicable law or regulation.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials _____  _____

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Borrower - ANTWAN HENRY                            Borrower -

_____ (Seal)          _____ (Seal)
Borrower -                                        Borrower -

_____ (Seal)          _____ (Seal)
Borrower -                                        Borrower -

*[Sign Original Only]*

PAY TO THE ORDER OF
**MILESTONE MORTGAGE CORPORATION**
WITHOUT RECOURSE
NETWORK FUNDING, L.P. BY: MILESTONE
MORTGAGE CORPORATION, Its Attorney in Fact

BY: _____
Name: L.B. HODGES
Title: PRESIDENT

PAY TO THE ORDER OF
**COUNTRYWIDE BANK, N.A.**

WITHOUT RECOURSE MILESTONE MORTGAGE
CORPORATION

BY: _____
Name: L.B. HODGES
Title: PRESIDENT

MULTISTATE ADJUSTABLE RATE NOTE-(LIBOR Index)—Single Family—Freddie Mac UNIFORM INSTRUMENT (MODIFIED) Form 3590 1/01 *(page 3 of 3 pages)*

Pay to the order of:

Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By: _Laurie Meder_
    Laurie Meder, SVP

Without Recourse
Countrywide Home Loans, Inc.

By: _Michele Sjolander_
    Michele Sjolander, SVP

# EXHIBIT 2

GF# _____
STEWART TITLE–HOUSTON DIVISION

After Recording Return To:

MILESTONE MORTGAGE CORPORATION SUB-PRIME
10255 RICHMOND AVENUE, SUITE 450
HOUSTON, TEXAS ▮▮▮▮▮

Y586796
07/05/05  100845152          $46.00

610        5085   D2  001  003      [Space Above This Line For Recording Data]

Loan Number ▮▮0158
MIN: 1001504-060590071-6

# DEED OF TRUST

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: Your Social Security Number or Your Driver's License Number.**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **JUNE 27, 2005**, together with all Riders to this document.
(B) "Borrower" is **ANTWAN HENRY, A SINGLE PERSON** . Borrower is the grantor under this Security Instrument.
(C) "Lender" is **NETWORK FUNDING, L.P.**. Lender is a **CORPORATION** organized and existing under the laws of **TEXAS.** Lender's address is **9700 RICHMOND AVENUE, HOUSTON, TEXAS 77042.** Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is **L. B. HODGES.** Trustee's address is **10255 RICHMOND AVENUE, SUITE 450, HOUSTON, TEXAS 77042.**
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **JUNE 27, 2005**. The Note states that Borrower owes Lender **ONE HUNDRED SIXTY-SEVEN THOUSAND TWO HUNDRED AND 00/100ths** Dollars (U.S.$167,200.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 1, 2035.**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1/01 (rev. 12/03) *(page 1 of 12 pages)*

**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☒ Planned Unit Development Rider
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the force of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items" means those items that are described in Section 3.

**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____**County**_____ of _____**HARRIS**_____ :

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 404083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of _____**11939 CANYON VALLEY DRIVE**_____

[Street]

**TOMBALL**_____ , Texas _____**77377**_____ ("Property Address"):

[City]   [Zip Code]

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3044  1/01 (rev. 12/03) (page 2 of 12 pages)

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01 (rev. 12/03) *(page 3 of 12 pages)*

Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1/01 (rev. 12/03) *(page 4 of 12 pages)*

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials _____

**TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3044  1/01 (rev. 12/03) *(page 5 of 12 pages)*

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Borrower Initials _____   _____

**TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3044  1/01 (rev. 12/03) *(page 6 of 12 pages)*

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Borrower Initials _____

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3044  1/01 (rev. 12/03) *(page 8 of 12 pages)*

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower Initials _____

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

Borrower Initials _____ _____

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒  **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐  **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐  **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐  **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

.........................................................(Seal)
ANTWAN HENRY                          -Borrower

.........................................................(Seal)
                                       -Borrower

.........................................................(Seal)
                                       -Borrower

.........................................................(Seal)
                                       -Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

State of **TEXAS**                          )
County of **HARRIS**                        )
    This instrument was acknowledged before me on ____6/29/05____ by **ANTWAN HENRY, A**
**SINGLE PERSON** .
(Seal)

**BRANDI SCHNEIDER**
Notary Public, State of Texas
My Commission Expires 06-14-2007

My commission expires:

_____
Notary Public, State of TEXAS
Notary's typed or printed name:

**TEXAS**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1/01 (rev. 12/03) *(page 12 of 12 pages)*

Loan Number███0158

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **27TH** day of **JUNE, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **NETWORK FUNDING, L.P.** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**11939 CANYON VALLEY DRIVE, TOMBALL, TEXAS 77377**
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in_____
**COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD**

(the "Declaration"). The Property is a part of a planned unit development known as_____
**CANYON GATE AT NORTHPOINTE, SECTION TWO (2)**
[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Borrower Initials _____

---

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3150 1/01
*(page 1 of 2 pages)*

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal)
**ANTWAN HENRY**                                    -Borrower

_____(Seal)
                                                   -Borrower

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
*(page 2 of 2 pages)*

Loan Number████0158

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **27TH** day of **JUNE, 2005,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **NETWORK FUNDING, L.P.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

11939 CANYON VALLEY DRIVE, TOMBALL, TEXAS 77377

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **7.800%.** The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the **1ST** day of **JULY, 2008,** and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN AND 30/100THS** percentage points (**7.300%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Borrower Initials _AH_ _____

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac UNIFORM INSTRUMENT (MODIFIED)

Form 3192 1/01  *(page 1 of 3 pages)*

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.800%** or less than **7.800%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND ONE-HALF** percentage point(s) **(1.500%)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.800%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower. As** used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials _____   _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Borrower - **ANTWAN HENRY**

_____ (Seal)
Borrower -

_____ (Seal)
Borrower -

_____ (Seal)
Borrower -

_____ (Seal)
Borrower -

_____ (Seal)
Borrower -

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

**JUL - 5 2005**

COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED
05 JUL -5 PM 12: 34
COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 3

GF# _____ 05123984 _____ /JG39

# GENERAL WARRANTY DEED WITH VENDOR'S LIEN
### (WITH SUBORDINATE VENDOR'S LIEN)

STEWART TITLE-HOUSTON DIVISION

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records. Your Social Security Number or Your Driver's License Number.**

07/05/05  100845151                          $18.00

| THE STATE OF TEXAS | ) | |
|---|---|---|
| | ) | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | ) | |

THAT **ROYCE MODEL HOMES, L.P.** , hereinafter called "GRANTOR" (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash and other good and valuable consideration to GRANTOR in hand paid by, **ANTWAN HENRY, A SINGLE PERSON**, whose mailing address is 11939 CANYON VALLEY DRIVE, TOMBALL, TEXAS 77377, hereinafter called "GRANTEE" (whether one or more), the receipt and sufficiency of which are hereby acknowledged, and for the further consideration of the sum paid to GRANTOR by **NETWORK FUNDING, L.P.**, hereinafter called FIRST-LIEN BENEFICIARY, at the special instance and request of GRANTEE, the receipt and sufficiency of which sum, being in the amount of **$167,200.00**, is hereby acknowledged and confessed; and as evidence of such advancement, GRANTEE has executed GRANTEE'S note of even date herewith for such amount payable to the order of FIRST-LIEN BENEFICIARY, said note payable as provided therein; and the payment of said note is secured by a vendor's lien reserved herein and is additionally secured by a deed of trust of even date with said note, executed by GRANTEE to **L. B. HODGES , TRUSTEE**, reference to which deed of trust is hereby made for all purposes; and in consideration of the payment by FIRST-LIEN BENEFICIARY of the sum specified in said deed of trust, GRANTOR hereby transfers, sets over, assigns, and conveys unto FIRST-LIEN BENEFICIARY and its assigns a vendor's lien and superior title retained and reserved herein against the property and premises conveyed herein in the same manner and to the same extent as if said notes had been executed in GRANTOR'S favor and assigned by GRANTOR to FIRST-LIEN BENEFICIARY without recourse; and GRANTOR has GRANTED, SOLD, and CONVEYED, and by these presents does GRANT, SELL, and CONVEY unto said GRANTEE, the following described real property, to-wit:

LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 404083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

TO HAVE AND TO HOLD the above-described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said GRANTEE and GRANTEE'S heirs and assigns forever. GRANTOR does hereby bind GRANTOR and GRANTOR'S heirs, executors, and administrators to warrant and forever defend, all and singular, the said premises unto the said GRANTEE and GRANTEE'S heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Taxes of every nature for the current year have been prorated and are assumed by GRANTEE. This conveyance is made subject to, all and singular, the restrictions, mineral reservations, royalties, easements, and covenants, if any, applicable to and enforceable against the above-described property as reflected by the records of the County Clerk of the aforesaid County.

GRANTOR and GRANTEE also acknowledge the retention of a second, subordinate and separate vendor's lien, and GRANTOR hereby transfers the same to **MILESTONE MORTGAGE CORPORATION**, hereinafter called "SECOND-LIEN BENEFICIARY", which lien secures GRANTEE'S certain other note of even date to SECOND-LIEN BENEFICIARY in the amount of **$41,800.00**, being further consideration paid to GRANTOR, as more particularly described in deed of trust of even date herewith to **L.B. HODGES, TRUSTEE**. But it is expressly agreed and stipulated that the vendor's lien and superior title are retained in favor of the FIRST-LIEN BENEFICIARY and SECOND-LIEN BENEFICIARY, respectively, against the above described property, premises and improvements, until each of the above respective notes is fully paid according to its terms, when this deed shall become absolute.

When this deed is executed by more than one person, or when the GRANTOR or GRANTEE is more than one person, this instrument shall read as though pertinent verbs, nouns and pronouns were changed to correspond, and when executed by or to a corporation, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns."

EXECUTED this   27TH / 29th   day of   **JUNE** , 2005.

ROYCE MODEL HOMES, L.P.

BY: _Kathy Kramer_

PRINTED NAME: _Kathy Kramer_

ITS: _Asst. Secretary_

THE STATE OF TEXAS            }
COUNTY OF                     }                              (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by

_____        _____
My commission expires                   Notary Public, State of
                                        Printed Name:

THE STATE OF TEXAS            }
COUNTY OF                     }                              (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by

_____        _____
My commission expires                   Notary Public, State of
                                        Printed Name:

THE STATE OF TEXAS            }
COUNTY OF                     }                              (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by

_____        _____
My commission expires                   Notary Public, State of
                                        Printed Name:

THE STATE OF TEXAS            }
COUNTY OF                     }                              (Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by

_____        _____
My commission expires                   Notary Public, State of
                                        Printed Name:

THE STATE OF TEXAS            }
COUNTY OF                     }                    (Corporate/Entity Acknowledgment)

This instrument was acknowledged before me on the _____ day of _____, _____,
by
of  ROYCE MODEL HOMES, L.P.
a _____, on behalf of said _____.

_____        _____
My commission expires                   Notary Public, State of
                                        Printed Name:

AFTER RECORDING RETURN TO:

**ANTWAN HENRY**
**11939 CANYON VALLEY DRIVE**
**TOMBALL, TEXAS  77377**

Re: 11939 CANYON VALLEY DRIVE TOMBALL TEXAS 77377

Title Data, Inc. SV TDI39176 HA Y586795.002

## CORPORATE ACKNOWLEDGEMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on this _29th_ day of ___June___, 2005, by **KATHY KRAMER**, **ASSISTANT SECRETARY** of Hammersmith Group, Inc., a Delaware corporation and general partner of Royce Homes, L.P., a Delaware limited partnership, on behalf of said corporation in its capacity therein stated.

*Elaine F. Thompson*
Notary Public in and for
The State of Texas



ELAINE F. THOMPSON
MY COMMISSION EXPIRES
February 28, 2009

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

JUL - 5 2005

*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

# EXHIBIT 4

# CONFIDENTIAL

FILED FOR RECORD
8:00 AM

MAR 2 4 2006

610 ▮▮▮5085 AFF 001 001

County Clerk, Harris County, Texas

Z177624
03/24/06 300801739

$16.00

## MORTGAGEE'S AFFIDAVIT
(Deed of Trust or Mortgage)

The undersigned, **DEBI COWLES-REESE** , does hereby depose and say as follows:

1. That I am an authorized officer of the mortgagee (or assignee), Mortgage Electronic Registration Systems, Inc.

2. That this Affidavit refers to the Deed of Trust or Mortgage from **MILESTONE MORTGAGE CORPORATION** to Mortgage Electronic Registration Systems, Inc., as nominee for **MILESTONE MORTGAGE CORPORATION** , its successors and assigns, in relation to property located at **11939 CANYON VALLEY DRIVE, TOMBALL, TX 77377** , dated **June 27, 2005** and recorded in Volume(s) , Page(s) of the map records of **HARRIS** County, Texas.

3. That the Mortgage Identification Number (MIN) was either omitted or incorrect on said Assignment.

4. That the correct MIN for the Deed of Trust or Mortgage is MIN **1001504-0605900071-6** , and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Signed this **27th** day of **December** , **2005** .

**DEBI COWLES-REESE**
**VICE PRESIDENT**

THE STATE OF TEXAS

COUNTY OF **HARRIS**

This instrument was acknowledged before me on the **27th** day of **December 2005** , by **DEBI COWLES-REESE** , **VICE PRESIDENT** of MILESTONE MORTGAGE CORPORATION on behalf of said entity.

Notary Public, State of Texas

**SHERRY L. TIPPIT**
Notary Public, State of Texas
My Commission Expires
January 10, 2007

**After Recording
Return to:
MILESTONE MORTGAGE CORPORATION
10255 RICHMOND AVE., SUITE 450
HOUSTON, TX 77042**

cdd: MERS DOT/Mortgage Affidavit 7/02

**BORROWER:** **HENRY**
**MMC LOAN #:** ▮▮▮0158

RP 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

CONFIDENTIAL

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the
date and at the time stamped hereon by me; and was duly RECORDED, in the
Official Public Records of Real Property of Harris County, Texas on

MAR 2 4 2006

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP 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

# EXHIBIT 5

CONFIDENTIAL

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Milestone Mortgage Corporation
10255 Richmond Avenue, Suite 450
Houston, Texas 77042-4133

---

## LIMITED IRREVOCABLE POWER OF ATTORNEY

The undersigned, _Network Funding, L.P._, a corporation organized and existing under the laws of the State of _Texas_ ("Broker/Lender"), does hereby make, constitute, and appoint Milestone Mortgage Corporation, with offices at 10255 Richmond Avenue, Suite 450, Houston, Texas 77042-4133 ("Milestone Mortgage"), for Broker/Lender's benefit and in Broker/Lender's name, place, and stead, as Broker/Lender's true and lawful agent and attorney-in-fact on the following terms and conditions:

### RECITALS

A.  Broker/Lender and Milestone Mortgage are parties to a certain Broker Agreement (the "Agreement") whereby Broker/Lender has agreed to originate, process and submit residential real estate loans which shall be closed in the name of Broker/Lender and funded by, and sold to, Milestone Mortgage (the "Loans"); and

B.  The Loans will be evidenced and/or secured by Promissory Notes, Deeds of Trust, Mortgages, Assignments, and/or other security documents or instruments or evidence of indebtedness that are to be assigned to Milestone Mortgage under the Agreement (collectively, the "Loan Documents"); and

C.  Broker/Lender desires to appoint certain employees and/or officers of Milestone Mortgage as its attorneys-in-fact for the limited purpose of executing all endorsements and assignments of the Loan and Loan Documents to Milestone Mortgage and taking such other action in connection therewith as required by the terms of the Agreement, as more fully set forth below.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Broker/Lender agrees as follows:

1.  Broker/Lender hereby makes, constitutes, appoints, and designates each of the following Milestone Mortgage Associates: L. B. Hodges, President, Debi Cowles-Reese, Vice President, or R. B. Jones III, Assistant Vice President, each of whom is an employee and/or an officer of Milestone Mortgage, as Broker/Lender's true and lawful attorneys-in-fact and agents, each individually with full right, power, and authority for Broker/Lender and in Broker/Lender's name, place, and stead, to endorse and assign to Milestone Mortgage any and all of the Loans and the Loan Documents, including, without limitation, all loan agreements, Promissory Notes, Deeds of Trust, Mortgages, Allonges, Trust Agreements, Pledge Agreements, Security Agreements, Guarantees, Financing Statements, Subordination Agreements, Assignments, Waivers, Acceptances, Bills of Sale, General Assignments, Title Insurance Commitments and Policies, Private Mortgage Insurance Policies, Hazard Insurance Policies, and all other documents, Riders, Agreements, and rights incidental to any of the foregoing.

2.  The grant of limited power of attorney evidenced hereby shall be deemed a power coupled with an interest and is irrevocable. The power of attorney granted herein shall not be terminated except by express written termination signed by Milestone Mortgage delivered in person, or mailed by Certified Mail, Return Receipt Requested, to Broker/Lender, and shall

1

**CONFIDENTIAL**

not ... insolvency, liquidation, or bankruptcy of Broker/Lender, or by a breach of the Agreement.

3. Unless this Limited Power of Attorney is terminated in accordance with the provisions of paragraph two (2) above, all persons dealing with Broker/Lender and Milestone Mortgage, including, without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Federal Housing Administration, the Governmental National Mortgage Association, the Department of Veterans Affairs, and any other purchaser, investor, assignee, insurer, or title insurer, shall be entitled to rely upon the powers granted by this instrument for all purposes and actions consistent with those powers, without need for further inquiry or investigation. Broker/Lender hereby ratifies all acts done by Milestone Mortgage in connection with the matters contemplated by this Limited Power of Attorney.

4. The undersigned person executing this instrument on behalf of Broker/Lender hereby represents that he/she is a duly authorized officer, partner or representative of Broker/Lender with full power and authority to execute and deliver this Limited Power of Attorney to Milestone Mortgage and to bind Broker/Lender to the terms of this instrument; that the execution and delivery of this Limited Power of Attorney to Milestone Mortgage is made with all necessary corporate and partnership approvals and actions; that this instrument is a legally binding obligation of Broker/Lender enforceable in accordance with its terms; and that the execution and delivery of the Limited Power of Attorney does not violate the terms of Broker/Lender's Articles of Incorporation, By-Laws, or partnership agreement, and does not constitute a breach of any other agreement to which Broker/Lender is bound or is a party.

5. If prior to the exercise of the powers hereby conferred upon Milestone Mortgage, Broker/Lender shall have become bankrupt, dissolved, liquidated, disabled, incapacitated, or have died, and Milestone Mortgage shall have thereafter exercised such power, Broker/Lender hereby declares any such acts performed by Milestone Mortgage pursuant to this Limited Irrevocable Power of Attorney binding and effective in the same manner that they would have been had such bankruptcy, dissolution, liquidation, disability, incapacity, or death of Broker/Lender not have occurred.

6. This Limited Irrevocable Power of Attorney shall be deemed effective immediately and may be recorded by Milestone Mortgage in multiple counterparts in multiple counties, with each such counterpart being deemed a duplicate original.

Executed this _____19th_____ day of _____Feb_____ _____2009_____

BROKER/LENDER:

Network Funding, L.P.

By: _____
Name: Ron Chamberlain
Title: CEO

MILESTONE MORTGAGE:

MILESTONE MORTGAGE CORPORATION

By: _____
Name: Debbi Conkey-Reese
Title: Vice President

2

CONFIDENTIAL

STATE OF ___Texas___, COUNTY OF ___Harris___, §§:

The foregoing instrument was acknowledged before me on ___February 19___
___2003___ by ___Rex Chamberlain___ ___CEO___ of
___Network Funding L.P.___
for and on behalf of said corporation.

NOTARY PUBLIC

BECKY MCCULLOUGH
Notary Public, State of Texas
My Commission Expires
August 27, 2006

STATE OF ___Texas___, COUNTY OF ___Harris___, §§:

The foregoing instrument was acknowledged before me on ___Feb 19, 2003___
___ by ___Debi Cowles-Pease___ ___Vice Pres, CFNF___ of
___Milestone Mortgage Corporation___, for and on behalf of said corporation.

NOTARY PUBLIC

SHERRY L. TIPPIT
Notary Public, State of Texas
My Commission Expires
January 10, 2007

3

# EXHIBIT 6

20110473774
11/10/2011   ER   $16.00

ASSGN
N

ER 027 - 92 - 2458



This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

DocID#.   2011163850851485

Property Address:
**11939 CANYON VALLEY DRIVE**
**Tomball, TX 77377**
TX0-ADT  13507629          11/0/2011

| Recording Requested By: | When recorded mail to: |
| Bank of America | CoreLogic |
| Prepared By: | 450 E. Boundary St. |
| Youda Crain | Attn: Release Dept. |
| 888-603-9011 | Chapin, SC 29036 |
| 450 E. Boundary St. | |
| Chapin, SC 29036 | |

MIN #: 1001504-0605900071-6          MERS Phone #:  888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED     CERTIFICATES, SERIES 2006-5** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

**3EE**

Original Lender:          **NETWORK FUNDING, L.P.**
Borrower(s):             **ANTWAN HENRY, A SINGLE PERSON**
Original Trustee:        **L. B. HODGES**
Date of Deed of Trust:   **6/27/2005**
Original Loan Amount:    **$167,200.00**
Recorded in **Harris County, TX** on: 7/5/2005, book RP 007-88, page 1054 and instrument number Y586796

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
11/4/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

**1OR**

By: _____

Swarupa Slee Vice President

State of California
County of Ventura
On NOV 0 4 2011 before me, **Tina Mazahri**, Notary Public, personally appeared Swarupa Slee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____          (Seal)
My Commission Expires: _____

TINA MAZAHRI
Commission # 1908072
Notary Public - California
Los Angeles County
My Comm. Expires Oct 22, 2014

ER 027 - 92 - 2459

20110473774
# Pages 2
11/10/2011    08:48:49 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 16.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

Title Data, Inc. SV TDI39176 HA 20110473774.002

# EXHIBIT 7

Antwan Henry
11939 Canyon Valley Dr
Tomball TX 77377-7636



# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| Antwan Henry, | ) | Case No.: 4:14-CV-02497 |
| | ) | |
| Plaintiff, | ) | **VERIFIED AMENDED COMPLAINT** |
| | ) | |
| vs. | ) | **Quiet Title,** |
| | ) | **Declaratory Judgment,** |
| BANK OF AMERICA, N.A., | ) | **Cancellation of Instruments,** |
| AS SUCCESSOR BY MERGER TO | ) | **Equitable Accounting,** |
| BAC HOME LOANS SERVICING, LP | ) | **Breach of Fiduciary Duty,** |
| TRUSTEE SERVICES, INC.; | ) | **FDCPA (15 U.S.C. § 1692-1692o)** |
| | ) | |
| THE BANK OF NEW YORK AS TRUSTEE | ) | |
| FOR THE CERTIFICATEHOLDERS CWABS, | ) | |
| INC. ASSET-BACKED CERTIFICATES, | ) | |
| SERIES 2006-5; | ) | |
| | ) | **Honorable Sim Lake, Presiding** |
| WALTER INVESTMENT | ) | |
| MANAGEMENT CORP; | ) | |
| | ) | |
| GREEN TREE LOAN SERVICING, LLC, | ) | |
| | ) | Complaint Filed 08/29/2014 |
| Defendants. | ) | |
| _____ | ) | |

Comes now the Plaintiff and alleges:

### Preliminary Statement

1. Plaintiff has received a Notice of Acceleration and a Notice of Trustee's Sale.

1

2. Defendant GREEN TREE LOAN SERVICING, LLC intends to sell. **A sale is currently scheduled for December 2, 2014 at 1:00 pm.**

3. The party conducting the sale is not authorized; the party claiming to be beneficiary is not the beneficiary; the party claiming to be trustee is not the trustee.

4. The loan was purported to be assigned to the trust after the "cut-off date," therefore the loan is not part of the Loan Pool of the Trust.

5. Two attempts at assignment were made (for a first mortgage and a second mortgage); neither of them bears the trust's correct name.[1]

6. The endorsements and transfer and delivery of the Note never occurred (there was no "true sale").

7. Allegations marked (*) will likely have evidentiary support after a reasonable opportunity for further investigation or discovery (see Rule 11).

### Jurisdiction and Venue

8. Jurisdiction is under 28 U.S.C. § 1331 because there is a Federal Question.

9. Jurisdiction is under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states, and the value in controversy exceeds $75,000.

10. Venue is proper because all events complained of occurred in this District.

### Parties

***PLAINTIFF***

11. Plaintiff is a citizen of Texas, domiciled at 11939 Canyon Valley Dr, Tomball TX 77377-7636, legally described as:

**LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF**

---

[1] The second mortgage has been discharged and is now moot.

AMENDED COMPLAINT

2

**RECORDED UNDER FILM CODE NO. 404083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

(hereafter "the Property").

***BANK OF AMERICA***

12. Defendant BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP ("BANA") is a foreign corporation doing business in Texas.

13. Defendant BANA can be served via its CEO, Brian T. Moynihan, address 100 N. Tryon St., Charlotte, NC 28255.

14. Defendant BANA purports to be "Mortgage Servicer" for THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5.

15. No trust named CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists. There is a trust named CWABS Asset-Backed Certificates Trust 2006-5.

16. Countrywide Home Loans is a wholly-owned subsidiary of Countrywide Financial Corporation.

17. On July 1, 2008, Bank of America Corporation completed its purchase of Countrywide Financial Corporation.

***THE BANK OF NEW YORK***

18. Defendant THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 ("BNY") is a foreign corporation doing business in Texas.

19. Defendant BNY can be served via its CEO, Gerald L. Hassell, c/o THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, address One Wall Street, New York, NY 10005.

3

AMENDED COMPLAINT

20. Defendant BNY is not owner and holder of any Note encumbering the Property.

21. In the alternative and without waiving the foregoing, Defendant BNY took the Note with notice that it is in default. BNY knowingly put itself in harm's way.

### GREEN TREE AND WALTER INVESTMENT MANAGEMENT CORP.

22. Defendant GREEN TREE SERVICING, LLC is a Delaware corporation and can be served via its Registered Agent, THE CORPORATION TRUST COMPANY, address 1209 NORTH ORANGE ST, WILMINGTON, DE 19801

23. Defendant GREEN TREE SERVICING, LLC is wholly owned by GTCS Holdings, LLC which is a wholly-owned subsidiary of Walter Investment Management Corp. (collectively "Green Tree").

24. Walter Investment Management Corp. controls its subsidiary, Defendant GREEN TREE SERVICING, LLC.

25. Walter Investment Management Corp. is a Maryland corporation and it can be served via its Registered Agent, THE CORPORATION TRUST INCORPORATED, address 351 WEST CAMDEN STREET, BALTIMORE, MD 21201.

26. All Defendants are jointly and severally liable.

### Factual Allegations:

27. All the following allegations are intended to be "without limitation" and will be supplemented by other facts to be found in discovery.

### OWNERSHIP AND POSSESSION

28. Plaintiff was and is the owner of the Property.

29. The Property is located in a judicial district of Texas under the 1876 Constitution.

30. The Property is not located in territory owned by or subject to the exclusive legislative jurisdiction of the United States of America.

4

AMENDED COMPLAINT

31. Plaintiff is, and has been, in continuous possession of the Property since on or about 05-JUL-5.

32. Plaintiff did not make a forcible entry into the Property.

33. Plaintiff is not unlawfully holding the possession of the Property by force.

34. Plaintiff does not have a landlord-tenant relationship with any Defendant.

35. Plaintiff has never sold the Property.

36. Plaintiff has never intended to irrevocably grant or convey the Property to any party.

37. Plaintiff has never been served with any Notice of Trustee's Sale.

## THE DEED TO PLAINTIFF

38. On 05-JUL-5, ROYCE MODEL HOMES, LP deeded the Property to Plaintiff, via a GENERAL WARRANTY DEED WITH VENDOR'S LIEN. This deed was recorded as 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.

39. Plaintiff's title comes from that GENERAL WARRANTY DEED WITH VENDOR'S LIEN.

## THE DEED OF TRUST

40. On 7/05/05, a DEED OF TRUST (hereafter "DOT") was recorded as 610-6085-02-001-002.

41. The Deed of Trust states: "After Recording Return To: MILESTONE MORTGAGE CORPORATION, 10255 RICHMOND AVENUE, SUITE 450, HOUSTON, TEXAS 77042"

42. The Deed of Trust names "ANTWAN HENRY, A SINGLE PERSON" as "Borrower."

43. The Deed of Trust states:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

5

AMENDED COMPLAINT

44. Thus (assuming the Deed of Trust is valid), Plaintiff is contractually obligated to defend generally the title to the Property against all claims and demands.

45. Plaintiffs' contractual obligation, expressed in the mortgage as quoted above, is to protect the interests of the holder/owner/investor/real party in interest.

46. (*) The holder/owner/investor/real party in interest is not any Defendant.

47. The DOT names NETWORK FUNDING, L.P. as "Lender."

48. (*) However, NETWORK FUNDING, L.P. did not lend any money to Plaintiff.

49. (*) NETWORK FUNDING, L.P. did not lend any credit to Plaintiff.

50. (*) The holder/owner/investor/real party in interest is not NETWORK FUNDING, L.P.

51. The DOT names L. B. HODGES as "Trustee".

52. (*) L. B. HODGES did not know he had been named as Trustee. Therefore, L. B. HODGES did not know about his powers, and could not exercise his powers, and therefore had no powers and was not in substance a Trustee.

53. (*) NETWORK FUNDING, L.P.'s General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend money.

54. (*) NETWORK FUNDING, L.P.'s General Ledger accounting entries will show that NETWORK FUNDING, L.P. did not lend credit.

55. (*) No Defendant holds the note and the mortgage.

56. (*) Plaintiff is not in default on any loan encumbering the Property.

### *THE NON-SECURITIZATION AND NON-PERFECTED LIEN*

57. Defendant BNY's agent Barrett Daffin Frappier Turner & Engel, LLP claims the Note has been securitized, because the name of the purported "Mortgagee" is "THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5," which is a typical securitization name.

AMENDED COMPLAINT

6

58. (*) However, the Note was not securitized.

59. (*) The Note bears writing that shows it fails to qualify as a "negotiable instrument."

60. The endorsements and transfer and delivery never occurred (there was no "true sale").

61. The note is endorsed in blank with no transfer and delivery receipts.

62. No written delivery and transfer receipts exist.

63. No written evidence exists of pay outs and pay in transactions.

64. The lender of record, as can be proven by following the money trail, is not and never was NETWORK FUNDING, L.P.

65. The mortgage originator, although designated as "lender" or even "beneficiary" is not the creditor even for a hypothetical instant in time.

66. The purported securitization did not take place but it was treated as though it were real.

67. The actual facts of the closing were that the mortgage originator and designated "lender," NETWORK FUNDING, L.P., was merely a mortgage broker.

68. There is no perfected lien.

69. The loan was not intended to be a loan from the mortgage originator to the borrower.

70. The principal demanded on the NOTICE OF ACCELERATION is wrong because there was never an accounting for third party payments.

71. It is the payments made pursuant to the PSA and Assignment and Assumption agreement that need an accounting, which will be obtained in discovery.

72. There were payments made on behalf of the pool or the trust to the investors but that these payments did not reach the investors, or that they did not entirely reach the investors.

73. No attempt has been made to allocate the payments to the underlying supposed assets, which are not assets, as set forth above because the loans were never assigned into the pool.

7

AMENDED COMPLAINT

74. The failure to identify the undisclosed principal creditor creates uncertainty as to who one would approach if they wanted a satisfaction of mortgage. If that is not apparent on its face, and it is an actual known fact that the originator is a straw-man, then the lien was never perfected.

75. A "perfected lien" in one that gives reliable notice about the debt and the creditor. The paperwork in the instant case does neither one, since it neither identifies the creditor nor does it describe the terms received by the creditor via the PSA and other securitization documents.

76. An unperfected lien is no lien at all and therefore cannot be foreclosed. But that is only a title issue — it does not address the issue of the obligation which surely arose because the borrower received the benefit of the funding of the loan from SOMEONE, even if he doesn't know who it is. So the objective is to prevent foreclosure and then leave the issue of damages for loss of money to anyone who can prove they actually lost money.

### NO ELECTRONIC TRANSFER

77. Plaintiff never gave his explicit agreement and authorization for his signature on any document to be transferred electronically.

78. Without that explicit agreement and authorization, the Note was not electronically transferable under the ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT (E-Sign) and the Uniform Electronic Transactions Act (UETA).

79. Without being electronically transferable, the Note could not lawfully be securitized.

### NO CHAIN OF TRANSFERS

80. (*) There is not an unbroken chain of transfers of the mortgage note from the originator to the trust.

81. (*) There was not a proper chain of transfers to include the originator, the sponsor, the depositor and the designated Trustee for the Trust.

AMENDED COMPLAINT

8

82. (*) The Note was not endorsed to each named transferee by each necessary party in the chain of transfers.

83. (*) The Endorsements are not signed by an authorized agent of transferor.

84. (*) No proof of agency is referenced or attached to the Note.

85. (*) Defendant BNY has a designated document custodian who holds the original notes for Defendant BNY as well as all of the delivery and receipt certificates regarding the notes.

86. (*) No delivery receipt to document the transfer and delivery of the bearer note from the originator to the sponsor exists.

87. (*) No acceptance receipt to document the transfer and delivery of the bearer note from the originator to the sponsor exists.

88. (*) No delivery receipt to document the transfer and delivery of the bearer note from the sponsor to the depositor exists.

89. (*) No acceptance receipt to document the transfer and delivery of the bearer note from the sponsor to the depositor exists.

90. (*) No delivery receipt to document the transfer and delivery of the bearer note from the depositor to the Trust exists.

91. (*) No acceptance receipt to document the transfer and delivery of the bearer note from the depositor to the Trust exists.

92. (*) The designated document custodian for the Trust maintained possession of all such documents including the original bearer note.

### *THE FIRST NOTICE OF ACCELERATION*

93. On August 08, 2014, Barrett Daffin Frappier Turner & Engel, LLP mailed a NOTICE OF ACCELERATION to Plaintiffs, on behalf of purported "Mortgage Servicer" BANK OF

9

AMENDED COMPLAINT

AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP (hereafter "BANA-BAC").

94. However, BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP is not a Mortgage Servicer.

95. BANA is not the Mortgage Servicer for any loan encumbering Plaintiff's property.

96. BANA recently sold, or is in the process of selling, all its mortgage servicing rights to other entities so that it would not have to abide by the terms of a recent Consent Order.

97. That NOTICE OF ACCELERATION identified the "Mortgagee" as:

THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5
c/o BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
PTX-C-32
7105 CORPORATE
PLANO, TX 75024

(hereafter "BNY").

98. (*) However, BNY is not a Mortgagee of any mortgage or deed of trust encumbering Plaintiff's property.

99. Barret Daffin cancelled the sale.

### THE CHANGE IN SERVICING TO GREEN TREE

100. On August 23, 2013, Bank of America mailed to Plaintiff a notice titled IMPORTANT INFORMATION ABOUT YOUR HOME LOAN, which stated:

The servicing of your home loan will be transferred to Green Tree Servicing on September 16, 2013.

101. On September 26, 2013, Bank of America mailed to Plaintiff a letter which stated:

Bank of America transferred the servicing of your loan to Green Tree Servicing, LLC, effective September 16, 2013.

10

AMENDED COMPLAINT

***THE STATEMENT FROM BANK OF AMERICA***

102. On September 1, 2014, Bank of America mailed to Plaintiff a monthly statement.

103. Because Green Tree Servicing, LLC has been the servicer since September 16, 2013, it follows that Bank of America has no business mailing a statement on September 1, 2014.

***THE SECOND NOTICE OF ACCELERATION***

104. On November 4, 2014, Barrett Daffin Frappier Turner & Engel, LLP, purporting to represent "BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, L.P.," mailed to Plaintiff a NOTICE OF ACCELERATION together with a NOTICE OF TRUSTEE'S SALE, sale date September 2, 2014 at 1:00 PM.

105. That NOTICE OF ACCELERATION stated:

GREEN TREE SERVICING LLC, as Mortgage Servicer, is representing the Mortgagee, whose address is:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5
c/o GREEN TREE SERVICING LLC
7360 SOUTH KYRENE ROAD
TEMPE, AZ 85283

***THE FIRST APPOINTMENT OF SUBSTITUTE TRUSTEE***

106. On 08/12/2008, an APPOINTMENT OF SUBSTITUTE TRUSTEE ("First Appointment") was recorded as 20080421085.

107. The First Appointment names CURRENT MORTGAGEE as THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5

108. The First Appointment states:

The Current Mortgagee under said Deed of Trust, according to the provisions therein set out does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead, Jeff Leva, Sandy Dasigenis, or Rachelle Babcock and RECONTRUST COMPANY, as Substitute Trustee, who shall

AMENDED COMPLAINT

11

hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the Mortgagee therein.

109. The First Appointment is purportedly signed by Kari Marx as Assistant Secretary of THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 BY COUNTRYWIDE HOME LOANS, INC., A.I.F.

110. Bank of America owns Recontrust and Countrywide.

111. So the First Appointment is purportedly signed by an officer of Countrywide, a sister company of Recontrust, the newly appointed Trustee.

112. The First Appointment was notarized by Tonya Hampton in Dallas County, Texas.

113. (*) Kari Marx did not have authority to sign the First Appointment.

114. (*) Kari Marx did not read the First Appointment and did not know its contents.

115. (*) Kari Marx did not sign the First Appointment; someone else signed it using her name.

116. No Power of Attorney was attached to the First Appointment.

117. (*) There is no recorded document making COUNTRYWIDE HOME LOANS, INC. an Attorney in Fact of BNY.

118. (*) COUNTRYWIDE HOME LOANS, INC. is not Attorney in Fact of BNY.

119. Jeff Leva, Sandy Dasigenis, Rachelle Babcock and RECONTRUST COMPANY do not have an arms-length relationship with COUNTRYWIDE HOME LOANS, INC., BNY or Bank of America.

120. The First Appointment states: "After recording return to: RECONTRUST COMPANY [the newly appointed Trustee], 2380 Performance Dr., RGV-D7-450, Richardson, TX 75082."

12

AMENDED COMPLAINT

121. 2380 Performance Dr., RGV-D7-450, Richardson, TX 75082 is the address of Bank of America.

**_THE SECOND APPOINTMENT OF SUBSTITUTE TRUSTEE_**

122. On 10/16/2008, an APPOINTMENT OF SUBSTITUTE TRUSTEE ("Second Appointment") was recorded as 20080503553.

123. The Second Appointment names CURRENT MORTGAGEE as THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5

124. The Second Appointment states:

> The Current Mortgagee under said Deed of Trust, according to the provisions therein set out does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead, Jeff Leva, Sandy Dasigenis, or Rachelle Babcock and RECONTRUST COMPANY, as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the Mortgagee therein.

125. The Second Appointment is dated 9/08/09, nearly a year AFTER it was recorded!

126. The Second Appointment is purportedly signed by Angela Nova as Assistant Secretary of THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDER S CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 BY COUNTRYWIDE HOME LOANS, INC., A.I.F.

127. Bank of America owns Recontrust and Countrywide.

128. So the Second Appointment is purportedly signed by an officer of Countrywide, a sister company of Recontrust, the newly appointed Trustee.

129. The Second Appointment was notarized by Tonya Hampton in Dallas County, Texas.

130. (*) Angela Nova did not have authority to sign the Second Appointment.

AMENDED COMPLAINT

131. (*) Angela Nova did not read the Second Appointment and did not know its contents.

132. (*) Angela Nova did not sign the Second Appointment; someone else signed it using her name,

133. No Power of Attorney was attached to the Second Appointment.

134. (*) There is no recorded document making COUNTRYWIDE HOME LOANS, INC. an Attorney in Fact of BNY.

135. (*) COUNTRYWIDE HOME LOANS, INC. is not Attorney in Fact of BNY.

136. Jeff Leva, Sandy Dasigenis, Rachelle Babcock and RECONTRUST COMPANY do not have an arms-length relationship with COUNTRYWIDE HOME LOANS, INC., BNY or Bank of America.

137. The First Appointment states: "After recording return to: RECONTRUST COMPANY [the newly appointed Trustee], 2380 Performance Dr., RGV-D7-450, Richardson, TX 75082."

138. 2380 Performance Dr., RGV-D7-450, Richardson, TX 75082 is the address of Bank of America.

### THE FIRST ASSIGNMENT OF DEED OF TRUST

139. On 11-10-2011, there was recorded in Harris County, TX as 20110473774 an ASSIGNMENT OF DEED OF TRUST ("First Assignment"), purportedly signed Nov 04, 2011 (over five years after the 3/28/2006 "closing date" of the Trust), which stated:

> 140. "For Value Received, [MERS but NOT as Nominee] does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-5 ... all beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein described ..."
> 141. The recording fee for the First Assignment was paid by BNY.

142. Plaintiff never received a letter notifying him of the First Assignment.

143. At all relevant times, from the date of the loan closing until today, including the date

14

AMENDED COMPLAINT

of signing of the First Assignment, MERS has never been registered to do business in California.

144. At all relevant times, MERS was not in good standing with the Secretary of State of California.

145. At all relevant times, MERS was not in good standing with the Secretary of State of its home state, Delaware.

146. Therefore, MERS had no authority to sign any document in commerce in California, including the First Assignment.

147. MERS has never had any beneficial interest under the Deed of Trust.

148. MERS never had authority to assign the loan in its own right—as opposed to "as nominee" of Network Funding, L.P.

149. The First Assignment was purportedly signed by Swarupa Slee as Vice-President of MERS (but NOT as Nominee for any party).

150. (*) Swarupa Slee did not have authority to sign the First Assignment.

151. (*) Swarupa Slee did not read or sign the First Assignment and did not know its contents.

152. (*) No consideration was received by MERS for the First Assignment.

153. As of Nov 4, 2011, MERS was not nominee or agent of any party that owned or possessed any Promissory Note encumbering the Property.

154. The First Assignment states: "Recording Requested By: BNY. Prepared By: Youda Crain (a CoreLogic employee)... When recorded mail to: CoreLogic"

155. (*) BNY had no knowledge of the First Assignment.

156. (*) CoreLogic, not BNY, requested the recording of the First Assignment.

157. The First Assignment is purportedly notarized by Tina Mazahri in Ventura County, California.

15

AMENDED COMPLAINT

158. (*) The First Assignment was not properly notarized.

159. (*) No other document (power of attorney, etc.) related to this transaction was ever recorded.

160. (*) The "MERS Milestones" (transfers and registrations) under MIN 1001504-0605900071-6 do not reflect the First Assignment.

161. (*) None of the Defendants has ever owned, nor had an interest in, nor been entitled to enforce, any Promissory Note encumbering the Property.

162. Plaintiff made some payments to BNY that remain unaccounted for.

163. The First Assignment shows on its face that MERS acted on its own, not "as nominee" of any party.

164. As of Nov 4, 2011, MERS did not own any Promissory Note encumbering the Property.

165. Thus the First Assignment of Deed of Trust was false on its face, as it claims to assign "all beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein described ..." and no such Note went from MERS to BNY.

### THE SECOND ASSIGNMENT OF DEED OF TRUST

166. On 7/26/2012, there was recorded in Harris County, TX as 20120334907 an ASSIGNMENT OF DEED OF TRUST ("Second Assignment"), purportedly signed Jul 17, 2012 (over five years after the 3/28/2006 "closing date" of the Trust), which stated:

> "For Value Received, [MERS but NOT as Nominee] does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A. ... all beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein described ..."

167. The recording fee for the Second Assignment was paid by BANA.

168. Plaintiff never received a letter notifying him of the Second Assignment.

169. At all relevant times, from the date of the loan closing until today, including the date

AMENDED COMPLAINT

of signing of the Second Assignment, MERS has never been registered to do business in California.

170. At all relevant times, MERS was not in good standing with the Secretary of State of California.

171. At all relevant times, MERS was not in good standing with the Secretary of State of its home state, Delaware.

172. Therefore, MERS had no authority to sign any document in commerce in California, including the Second Assignment.

173. MERS has never had any beneficial interest under the Deed of Trust.

174. MERS never had authority to assign the loan in its own right—as opposed to "as nominee" of Network Funding, L.P.

175. The Second Assignment was purportedly signed by Elsi Navarro as Vice-President of MERS (but NOT as Nominee for any party).

176. (*) Elsi Navarro did not have authority to sign the Second Assignment.

177. (*) Elsi Navarro did not read or sign the Second Assignment and did not know its contents.

178. (*) No consideration was received by MERS for the Second Assignment.

179. As of Jul 17, 2012, MERS was not nominee or agent of any party that owned or possessed any Promissory Note encumbering the Property.

180. The Second Assignment states: "Recording Requested By: BNY. Prepared By: Diana De Avila (a CoreLogic employee)... When recorded mail to: CoreLogic"

181. (*) BANA had no knowledge of the Second Assignment.

182. (*) CoreLogic, not BANA, requested the recording of the Second Assignment.

183. The Second Assignment is purportedly notarized by Elsi Navarro Barbara Joyce Liley

17

AMENDED COMPLAINT

in Ventura County, California.

184. (*) The Second Assignment was not properly notarized.

185. (*) No other document (power of attorney, etc.) related to this transaction was ever recorded.

186. (*) The "MERS Milestones" (transfers and registrations) under MIN 1001504-0605900072-4 do not reflect the Second Assignment.

187. (*) None of the Defendants has ever owned, nor had an interest in, nor been entitled to enforce, any Promissory Note encumbering the Property.

188. Plaintiff made some payments to BNY that remain unaccounted for.

189. The Second Assignment shows on its face that MERS acted on its own, not "as nominee" of any party.

190. As of Jul 17, 2012, MERS did not own any Promissory Note encumbering the Property.

191. Thus the Second Assignment of Deed of Trust was false on its face, as it claims to assign "all beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein described ..." and no such Note went from MERS to BANA.

### THE THIRD APPOINTMENT OF SUBSTITUTE TRUSTEE

192. On 8/26/2014, an APPOINTMENT OF SUBSTITUTE TRUSTEE ("Third Appointment") was recorded as 20140381580.

193. The Third Appointment names THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 as "mortgagee, or as mortgage servicer for the mortgagee".

194. The Third Appointment states:

The undersigned as mortgagee, or as mortgage servicer for the mortgagee rmder Texas Property Code Sec.51.0075, does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead NATHAN SANCHEZ,

18

AMENDED COMPLAINT

REX KESLER, THOMAS REDER, CARL MEYERS, LEB KEMP, MARK BULEZIUK, JEFF JOHNSTON, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, DUSTIN EMANUELE, BRADLEY ROSS, OR ALAN STEPHENS as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein.

195. The Third Appointment is purportedly signed by Verlina Ann Griffin as Assistant Vice President of THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDER S CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 By Bank of America N.A., (BANA), as attorney in fact, (AIF)

196. The Third Appointment was notarized by Tonya Hampton in Dallas County, Texas.

197. (*) Verlina Ann Griffin did not have authority to sign the Third Appointment.

198. (*) Verlina Ann Griffin did not read the Third Appointment and did not know its contents.

199. (*) Verlina Ann Griffin did not sign the Third Appointment; someone else signed it using her name.

200. No Power of Attorney was attached to the Third Appointment.

201. (*) There is no recorded document making Bank of America an Attorney in Fact of BNY.

202. (*) Bank of America is not Attorney in Fact of BNY.

203. NATHAN SANCHEZ, REX KESLER, THOMAS REDER, CARL MEYERS, LEB KEMP, MARK BULEZIUK, JEFF JOHNSTON, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, DUSTIN EMANUELE, BRADLEY ROSS, and ALAN STEPHENS do not have an arms-length relationship with COUNTRYWIDE HOME LOANS, INC., BNY or Bank of

19

AMENDED COMPLAINT

America.

204. The Third Appointment states: "RETURN TO: BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, 15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001"

205. Barrett Daffin did not have authority to prepare or file the Third Appointment, does not have an arms-length relationship with Defendants, and will benefit from the Third Appointment, therefore the Third Appointment is fictitious.

### BNY IS NOT HOLDER IN DUE COURSE OF THE NOTE

206. (*) There is no signature endorsing the Note from the original lender.

207. (*) The Note when issued or negotiated to BNY bore such apparent evidence of forgery or alteration or was otherwise so irregular or incomplete as to call into question its authenticity.

208. (*) BNY did not take the Note for value.

209. (*) BNY did not take the Note in good faith.

210. (*) BNY did not take the Note without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series.

211. (*) BNY did not take the Note without notice that the instrument contains an unauthorized signature or has been altered

212. (*) BNY did not take the Note without notice of any claim to the instrument described in UCC Section 3-306.

213. (*) BNY did not take the Note without notice that any party has a defense or claim in recoupment described in UCC Section 3-305(a).

### VALIDITY OF FRAUDULENTLY CREATED DOCUMENTS

214. Defendants produced fictitious documents. See transcript of the Meeting of the Task

20

AMENDED COMPLAINT

Force on Judicial Foreclosure Rules November 7, 2007 (note pages 27, 28 and 33)[2], which addresses the same fraudulent practices (Exhibit A).

215. On page 27, lines 6-22, Mr. Mike Barrett of Barrett Daffin Frappier Turner & Engel stated: "There really isn't such a document" during the discussion about verification of application documents.

216. On page 27, Lines 10-20, Mr. Barrett continued to state:

because the servicer usually acquired their position in the file through the purchase of MSRs. There is an organized market in MSRs that really makes up maybe as much as 40 to 50 percent of any mortgage company's assets, and they acquired this -- their status of being a servicer through the purchase of an MSR most of the time, or they did it themselves, they created their own loan. So finding a document that says, "I am the owner and holder, and I hereby grant to the servicer the right to foreclose in my name" is an impossibility in 90 percent of the cases."

217. On Page 28, lines 8-20, Honorable Judge Bruce Priddy stated:

And what the -- happens is they just execute a document like Mr. Barrett say doesn't exist. They just create one for the most part sometimes, and the servicer signs it themselves saying that it's been transferred to whatever entity they name as applicant.

218. On pages Page 25, lines 16-25, page 26, lines 1-15, Mr. Tommy Bastian of Barrett Daffin Farppier Turner & Engle, LLP, explained MERS:

MERS is going to be the mortgagee of record. In about 60 percent of all loans MERS is going to be the mortgagee of record, but all MERS is is a registration system. That's all it is. It really is a piggyback on what happened in the securities market back in the early Seventies when Wall Street was exploding, and back in those days whenever you bought and sold stocks or bonds you had to have a paper certificate. Well, the back rooms couldn't keep up with it, and Wall Street almost cratered, and they came up with a book entry system that everybody is familiar with today where loans are bought and sold, and that's basically what MERS is. It's just a listing of who has all the beneficial ownership interest in a mortgage, and that's going to be the investor, it's going to be the mortgage servicer, it's going to be the subservicers. It gives you four or five, six pieces of corroborating information about the borrower and that particular loan. I mean, it has the detail on their status sheet

---

[2] The transcript was once found on the Supreme Court of Texas website (http://www.supreme.courts.state.tx.us/jfrtf/pdf/110707transcript.pdf) however it is no longer there.

AMENDED COMPLAINT

that says, "This is when the loan was made, here is the borrower, and here's the amount of the loan." I mean, all that information is right there so that if the loan is registered on MERS it's real easy to determine all the different parties in the transaction, and that's the way the world's going, so maybe that's kind of the place we need to be going.

## FIRST CAUSE OF ACTION
### (Quiet Title)
### (Against All Defendants)

219. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

220. The real property described above is not in the actual possession of any person other than plaintiff.

221. Plaintiff has an ownership interest in the real property described above.

222. Defendants are asserting a claim that affects Plaintiff's title to the real property described above.

223. Defendants' claim is invalid, unenforceable and without merit. Defendants have no estate, title, claim, lien, or interest in the real property or any portion thereof.

224. Plaintiff has no plain, speedy, or adequate remedy at law.

225. Plaintiff requests a quieting of title in Plaintiff's name.

## SECOND CAUSE OF ACTION
### (Request for Declaratory Relief)
### (Against All Defendants)

226. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

227. There is a "justiciable controversy."

228. The NOTICE OF ACCELERATION constitutes a notice of default.

229. BANA does not have ownership or possession of any promissory note encumbering the Property, neither by itself nor through any agent, officer, employee or principal.

22

AMENDED COMPLAINT

230. Green Tree does not have ownership or possession of any promissory note encumbering the Property, neither by itself nor through any agent, officer, employee or principal.

231. BNY does not have ownership or possession of any promissory note encumbering the Property, neither by itself nor through any agent, officer, employee or principal.

232. Plaintiff request a declaration that no Defendant is the owner or holder of any Note encumbering the Property; that no Defendant has any secured interest in Plaintiffs' property; and that Plaintiff has no legal relationship with any Defendant; and that Plaintiff is the owner of the Property, and that the Note was not securitized, and that the debt is unsecured.

233. In the alternative and without waiving the foregoing, Plaintiff request a declaration that BANA is not protected by Holder in Due Course Doctrine, for the following two reasons:

234. **Defendant BNY had notice:** When mortgage backed securities were at their peak of popularity, a group of investors realized that many consumers were being approved for loans they did not have a dream of affording. These investors noticed that underwriting standards were ignored in order to package up and sell mortgage backed securities to unsuspecting investors. Borrowers were misled and lied to in order to lure them into these loans. Because of these realizations, a group of investors, including BNY, began to bet against the mortgage backed securities market by the use of credit default swaps - a kind of stock insurance that was issued even to non-stockholders.

235. BNY's use of these credit default swaps, along with ample other press related evidence, proves that BNY knew of the issues inherent in its acquisition of mortgages, including Plaintiffs' mortgage.

236. Therefore, BNY had notice of the issues present in the mortgages it acquired, including Plaintiffs' mortgage, and is, therefore, not a holder in due course.

237. Specifically, BNY had notice of all defenses to any, each and every Note encumbering the Property, including but not limited to: Fraud in the execution (this occurs when a person is

AMENDED COMPLAINT

23

deceived into signing a negotiable instrument believing that he is signing something other than a negotiable instrument); Material alteration; Discharge in bankruptcy; Breach of contract or breach of warranty; Lack or failure of consideration; Fraud in the inducement.

238. **Improper Endorsement:** If the Court disagrees with Plaintiff and believes BNY should continue to enjoy holder in due course status despite the notice of potential claims, Plaintiff additionally request that the Court require BNY to prove that the transfer and endorsement of the notes were proper before allowing them to enforce rights as the new holder of the notes.

239. It hardly seems just to allow BNY to take the benefits of both a negotiable and non-negotiable instrument. To allow BNY to circumvent the requirements of transfer and endorsement of negotiable instruments and enjoy holder in due course status would frustrate the laws.

240. The legislature has made a distinction in the treatment of negotiable and non-negotiable instruments purposefully. In order to protect makers of promissory notes from dual claims for payment, specific requirements are present for the transfer and endorsement of negotiable instruments that are not requirements of non-negotiable instruments.

241. To properly transfer a negotiable instrument, the physical Note must be transferred from the seller to the buyer (see supra). Furthermore, the Note must be indorsed to the transferee. This endorsement must be made on the Note if there is room. ORS 73.0204(1) provides, "for the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." Furthermore, the Court in Pribus v. Bush, 118 Cal. App. 3d 1003 decided that an allonge is not an effective indorsement when there is ample room for an indorsement on the note itself. Plaintiff allege that any Note encumbering the Property neither has been properly endorsed nor transferred.

242. Holder in Due Course protection requires a negotiable instrument, transfer of the actual note, and proper endorsement of the note.

AMENDED COMPLAINT

24

243. BNY is not an ordinary state-chartered private corporation, but a National Association, and therefore acts as an arm or agent of the United States government. Therefore, the Due Process required by the Constitution mandates a hearing before BNY may take Plaintiffs' property by non-judicial foreclosure sale.

244. A judicial declaration is necessary and appropriate at this time and so that the Plaintiff may ascertain their rights and duties and avoid any illegal collection activity which might occur.

**THIRD CAUSE OF ACTION**
(Cancellation of Instrument)
(Against All Defendants)

245. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

246. No trust named CERTIFICATEHOLDERS CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-5 exists.

247. Plaintiff requests cancellation of the First Notice of Acceleration, the Second Notice of Acceleration, the First Appointment of Substitute Trustee, and the Second Appointment of Substitute Trustee, and the Third Appointment of Substitute Trustee.

**FOURTH CAUSE OF ACTION**
(Request for Equitable Accounting)
(Against All Defendants)

248. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

249. Plaintiff does not owe the amount that Defendants claim.

250. As a result, Plaintiff was damaged in an amount to be determined at trial.

251. Plaintiff requests an equitable accounting.

**FIFTH CAUSE OF ACTION**
(Breach of Fiduciary Duty)
(Against Defendants BANA, Green Tree)

252. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

253. The purported mortgage service company, Defendant BANA, had a fiduciary duty to

AMENDED COMPLAINT

Plaintiff, to properly and timely apply all payments.

254. The purported mortgage service company, Defendant GREEN TREE LOAN SERVICING, LLC, and its corporate parent, Defendant WALTER INVESTMENT MANAGEMENT CORP, had a fiduciary duty to Plaintiff

255. (*) Defendant BANA did not properly and timely apply all payments.

256. (*) Defendant GREEN TREE LOAN SERVICING, LLC did not properly and timely apply all payments.

257. (*) The faulty practices of the mortgage service companies caused delays in Plaintiffs' mortgage payments.

258. As a result, Plaintiff was damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(Fair Debt Collection Practices Act)
(Against Defendants BANA, Green Tree)

259. It has been said that "the activity of foreclosing on property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." See, Hulse v. Ocwen Federal Bank FSB, 195 F.Supp.2d 1188 (2002).

260. However, Hulse relied on Heinemann v. Jim Walter Homes, Inc.,47 F.Supp.2d 716 (D.W.Va.1998), aff'd, 173 F.3d 850 (4th Cir.1999), in which the key passage is:

> Although not expressly raised in this particular count, Plaintiff may be attempting to raise a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1601-1693r. However, the statute of limitations relating to violations of the FDCPA is one year. 15 U.S.C. § 1692k(d). As can be seen from the recitation of the undisputed facts, the only activity which occurred after April 17, 1997, was the corrected publication of the notice of sale and the final trustee's sale. Since the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA. See, 15 U.S.C. § 1692a(6).

AMENDED COMPLAINT

261. It is apparent that the issue was not expressly raised by the <u>Heinemann</u> plaintiff and was not argued or litigated by the parties. Thus, it was not exposed to the crucible of opposing views and thorough airing of the issues by litigants with something at stake.

262. The paragraphs under "Parties" and "Factual Allegations" are incorporated here.

263. None of the Defendants is a "mortgage company".

264. Defendants BANA and Green Tree are "debt collector"s as defined by 15 U.S.C. § 1692a (6) and devote a substantial portion of their business to the collection of consumer debts, such as the alleged debt at issue in this litigation.

265. The debt alleged by BANA and Green Tree, at issue in this litigation, is covered as a debt as defined 15 U.S.C. 1692a (5), since it was incurred for the personal, family or household purposes of the Plaintiffs.

266. Plaintiff timely disputed all notices and claims of debt and demanded verification and validation.

## Count I

267. Defendants Bank of America, N.A. and Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP wrote a debt collection letter to Plaintiff.

268. On July 31, 2014, Plaintiff mailed a letter (the "First Debt Dispute Letter") to Defendant BANA, disputing the debt and requesting verification and validation of the debt and everything that is permissible to request under the FDCPA.

269. The First Debt Dispute Letter also constituted a Qualified Written Request (QWR) under RESPA, as it requested information about the servicing of the loan.

270. On August 21, 2014, Blank Rome LLP on behalf of Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, responded to the First Debt Dispute Letter with a letter ("the August 21 Letter").

AMENDED COMPLAINT

271. However, the August 21 Letter did not satisfy the requirements of the FDCPA.

272. The August 21 Letter did not verify the debt.

273. The August 21 Letter did not correctly name the owner of the debt.

274. Bank of America, N.A. did not otherwise respond.

275. Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP did not otherwise respond.

276. BANA violated 15 U.S.C. § 1692g (b) by failing to obtain verification and validation of the alleged debt and mail copies thereof to the Plaintiff after it was timely disputed and demanded that verification and validation be sent to him.

277. As a result, Plaintiff was damaged in an amount to be determined at trial.

## Count II

278. Defendant BANA wrote a debt collection letter to Plaintiff.

279. Plaintiff mailed a letter (the "Second Debt Dispute Letter") to Defendant BANA, disputing the debt and requesting verification and validation of the debt and everything that is permissible to request under the FDCPA.

280. BANA violated 15 U.S.C. § 1692g(b) by continuing to proceed with debt collection activities, including instituting foreclosure proceedings, without providing the required verification and validation.

281. As a result, Plaintiff was damaged in an amount to be determined at trial.

## Count III

282. BAC Home Loans Servicing, LP, agent of BANA, wrote a debt collection letter to Plaintiff.

283. On July 31, 2014, Plaintiff mailed a letter (the "Third Debt Dispute Letter") to the return address at Bank of America, N.A., ATTN: Home Retention Division, with a copy to Bank

AMENDED COMPLAINT

of America, N.A. Office of the CEO and President in Charlotte, NC, disputing the debt and requesting verification and validation of the debt and everything that is permissible to request under the FDCPA.

284. Neither BAC Home Loans Servicing, LP nor BANA responded.

285. Defendant BANA violated 15 U.S.C. § 1692g (b) by failing to obtain verification and validation of the alleged debt and mail copies thereof to the Plaintiff after it was timely disputed and demanded that verification and validation be sent to him.

286. As a result, Plaintiff was damaged in an amount to be determined at trial.

## Count IV

287. On 11/4/2014, Barrett Daffin, agent of Defendant Green Tree Servicing LLC, wrote a debt collection letter to Plaintiff.

288. On November 17, 2014, Plaintiff mailed a letter (the "Fourth Debt Dispute Letter") to Barrett Daffin, disputing the debt and requesting verification and validation of the debt and everything that is permissible to request under the FDCPA.

289. The Fourth Debt Dispute Letter also constituted a Qualified Written Request (QWR) under RESPA, as it requested information about the servicing of the loan.

290. Barrett Daffin did not respond.

291. Defendant Green Tree Servicing LLC, through its agent Barrett Daffin violated 15 U.S.C. § 1692g (b) by failing to obtain verification and validation of the alleged debt and mail copies thereof to the Plaintiff after it was timely disputed and demanded that verification and validation be sent to him.

292. As a result, Plaintiff was damaged in an amount to be determined at trial.

## Count V

293. On 11/4/2014, Barrett Daffin, agent of Defendant Green Tree Servicing LLC, wrote a

29

AMENDED COMPLAINT

debt collection letter to Plaintiff.

294. On November 19, 2014, Plaintiff mailed a letter (the "Fifth Debt Dispute Letter") to BNY c/o Tom J. Franco, President of Green Tree Servicing LLC, disputing the debt and requesting verification and validation of the debt and everything that is permissible to request under the FDCPA.

295. The Fifth Debt Dispute Letter also constituted a Qualified Written Request (QWR) under RESPA, as it requested information about the servicing of the loan.

296. Neither BNY, Tom J. Franco, nor Green Tree Servicing LLC responded.

297. Defendant Green Tree Servicing LLC, through its agent Barrett Daffin violated 15 U.S.C. § 1692g (b) by failing to obtain verification and validation of the alleged debt and mail copies thereof to the Plaintiff after it was timely disputed and demanded that verification and validation be sent to him.

298. As a result, Plaintiff was damaged in an amount to be determined at trial.


## PRAYER FOR RELIEF

299. Plaintiff pray this honorable Court take jurisdiction of this case.

300. Plaintiff pray for Decrees and Judgments as follows:

301. Enjoin, immediately, all Defendants, their agents, officers, employees and principals, during the pendency of this action, and permanently thereafter, from recording any deeds or mortgages regarding the Property; from selling, assigning or transferring mortgages, trust deeds or obligations relating to the Property; from instituting, prosecuting, or maintaining non-judicial or judicial foreclosure proceedings against the Property; from instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiffs; or from otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of the Property.

30

AMENDED COMPLAINT

302. On Plaintiffs' First Claim (Quiet Title):

(a) Require defendant(s) and all persons claiming under defendant(s) to set forth the nature of their claims, if any, to the real property described in paragraph 1 herein;

(b) Determine all adverse claims, if any, of defendant(s) and all persons claiming under defendant(s);

(c) Declare Plaintiff to be the owners in fee simple of the real property described above and entitled to possession thereof, free of any estate, title, claim, lien, or interest in the premises or any portion thereof;

(d) Enjoin defendant(s) and those claiming under defendant(s) from asserting any estate, title, claim, lien, or interest in the premises or any portion thereof;

(e) Award Plaintiff their costs and disbursements incurred herein;

(f) and a quieting of title in favor of Plaintiff.

303. On Plaintiffs' Second Claim (Declaratory Judgment): that no Defendant is the owner or holder of any Note encumbering the Property; that no Defendant has any secured interest in Plaintiffs' property; and that Plaintiff has no legal relationship with any Defendant; and that Plaintiff is the owner of the Property, and that the Note was not securitized, and that the debt is unsecured; or in the alternative and without waiving the foregoing, a declaration that BANA is not protected by Holder in Due Course Doctrine.

304. On Plaintiffs' Third Claim (Cancellation of Instrument): Cancel, vacate and set aside the First Notice of Acceleration, the Second Notice of Acceleration, the First Appointment of Substitute Trustee, and the Second Appointment of Substitute Trustee, and the Third Appointment of Substitute Trustee.

305. On Plaintiffs' Fourth Claim (Equitable Accounting): Order Defendants to provide an equitable accounting.

AMENDED COMPLAINT

31

306. On Plaintiffs' Fifth Claim (Breach of Fiduciary Duty): such relief as the Court deems just and proper.

307. On Plaintiffs' Sixth Claim (FDCPA): such relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 24, 2014      /s/   **_Antwan Henry_**
                                      Antwan Henry, Plaintiff

AMENDED COMPLAINT

EXHIBIT   A

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

MEETING OF THE

TASK FORCE ON JUDICIAL FORECLOSURE RULES

November 7, 2007

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Taken before D'Lois L. Jones, Certified
Shorthand Reporter in and for the State of Texas, reported
by machine shorthand method, on the 7th day of November,
2007, between the hours of 9:36 a.m. and 11:46 a.m., at
the Winstead, Sechrest & Minick, 401 Congress, Suite 2400,
Austin, Texas 78701.

Page 26

1  system that everybody is familiar with today where loans
2  are bought and sold, and that's basically what MERS is.
3  It's just a listing of who has all the beneficial
4  ownership interest in a mortgage, and that's going to be
5  the investor, it's going to be the mortgage servicer, it's
6  going to be the subservicers. It gives you four or five,
7  six pieces of corroborating information about the borrower
8  and that particular loan. I mean, it has the detail on
9  their status sheet that says, "This is when the loan was
10  made, here is the borrower, and here's the amount of the
11  loan." I mean, all that information is right there so
12  that if the loan is registered on MERS it's real easy to
13  determine all the different parties in the transaction,
14  and that's the way the world's going, so maybe that's kind
15  of the place we need to be going.
16          MR. BAGGETT: But MERS is in D.C. and it's
17  national and --
18          MR. BASTIAN: Yeah. It is the book entry
19  that's referenced in 51.001 as the book -- the book entry
20  system. That's what MERS is.
21          HONORABLE MARK DAVIDSON: Well, all I'm
22  saying is I don't -- I see reasons for the rule to be one
23  way or the other, but I think the rule should be clearer
24  as to whether capacity, standing, ability, power, call it
25  what you will, has to be affirmatively proven within the

Page 27

1  four corners of the papers filed with the court or whether
2  the verified application without any paperwork being
3  attached is enough to require a judge to sign the request
4  for relief.
5          MR. BAGGETT: Right. That's fair.
6          MR. BARRETT: Judge, I think that's a very
7  good point. This is Mike Barrett, and I know we've had
8  this difficulty. There really isn't such a document, and
9  maybe, Larry, you might explain mortgage servicing rights
10  because the servicer usually acquired their position in
11  the file through the purchase of MSRs. There is an
12  organized market in MSRs that really makes up maybe as
13  much as 40 to 50 percent of any mortgage company's assets,
14  and they acquired this -- their status of being a servicer
15  through the purchase of an MSR most of the time, or they
16  did it themselves, they created their own loan. So
17  finding a document that says, "I am the owner and holder,
18  and I hereby grant to the servicer the right to foreclose
19  in my name" is an impossibility in 90 percent of the
20  cases. So we're going to have to deal with that
21  particular issue, and an understanding of who the servicer
22  is and what an MSR is may be important to the transaction.
23          MR. BAGGETT: Okay. Judge.
24          HONORABLE BRUCE PRIDDY: Yeah, in Dallas
25  we've wrestled with this issue, and I think most of the

Page 28

1  courts in Dallas require some sort of assignment of the
2  note to the applicant so the applicant is actually the
3  person or the entity that has the rights under the --
4          MR. BAGGETT: Judge Davidson, can you hear
5  that?
6          HONORABLE MARK DAVIDSON: Most of it.
7          MR. BAGGETT: Speak up.
8          HONORABLE BRUCE PRIDDY: And what the --
9  happens is they just execute a document like Mr. Barrett
10  says doesn't exist. They just create one for the most
11  part sometimes, and the servicer signs it themselves
12  saying that it's been transferred to whatever entity they
13  name as the applicant. I think we can avoid a lot of
14  problems if we specifically allow the servicer standing
15  under Rule 736, because I think it's -- we don't
16  specifically allow the servicer to proceed, and I think if
17  we tie in with the Property Code provision that the
18  servicer can proceed with foreclosure if certain
19  circumstances are met, if we tie into that in the rule I
20  think we'll avoid a lot of these problems.
21          MR. BAGGETT: Yeah, I think you might be
22  right because whatever vehicles we have, you do have a
23  servicer if there's multiple parties, and that is the most
24  logical entity to go forward. We just need -- if we're
25  going to do that, we need to figure out how we do it

Page 29

1  cleanly so that everybody understands it.
2          Manny, did you have a comment you want to
3  make? Larry, you want to talk?
4          MR. TEMPLE: Mike suggested I do that and
5  then he did it so well there's nothing for me to add.
6  That really tells you what the servicers do, and I just
7  wonder if you added into Rule 736 in what has to be pled
8  just a statement that the person, the movant, is either
9  the owner or is the servicer with the power from the owner
10  to --
11          MR. BAGGETT: Yeah.
12          MR. TEMPLE: -- therefore proceed.
13          MR. BAGGETT: And swear to that as part of
14  the application process. Judge, would that do it?
15          HONORABLE BRUCE PRIDDY: Perhaps.
16          MR. BAGGETT: Okay.
17          HONORABLE BRUCE PRIDDY: One of the other
18  concerns I have is that most of the applications, the rule
19  says it can be on information -- it can be on personal
20  knowledge or information and belief, if they state the
21  basis for information and belief. Nearly all of the
22  applications I see are on personal knowledge, and you can
23  tell that there's no way that one person can have personal
24  knowledge of everything that's in there.
25          MR. BAGGETT: That's true.

8 (Pages 26 to 29)

Page 30

1    MR. BARRETT: Exactly.
2         HONORABLE BRUCE PRIDDY: It's just -- to me,
3    I think we need to massage it a little bit and not
4    encourage folks who do this, because it really kind of
5    devalues the idea of personal knowledge in my court
6    because of what they're saying they have personal
7    knowledge to they can't possibly have personal knowledge
8    to.
9         MR. BAGGETT: That's probably right.
10        HONORABLE BRUCE PRIDDY: And so I would like
11   to have some tweaks of that.
12        MR. BAGGETT: And we shouldn't write the
13   rule in a way that they can't possibly comply with it.
14   That's not very smart.
15        HONORABLE BRUCE PRIDDY: Right. But they
16   can do it if they do it on information and belief and just
17   say that it's based on their records, but no one does
18   that. They just say they have personal knowledge, and you
19   can't have personal knowledge that a loan occurred in
20   1978.
21        MR. BARRETT: That is exactly right. Some
22   of these companies are servicing six million mortgages.
23   The records with those mortgages are spread out in cities
24   across America. The clerk who is preparing the document
25   the judge refers to is usually an employee for less than a

Page 31

1    year or two, and there's no way they know, so you're
2    absolutely right, Judge.
3         MR. BAGGETT: Yeah, but we also -- we've
4    also got to write it in a way that they take enough time
5    and effort to make sure that it really is the right
6    servicer doing it. I don't want to go so far on the other
7    side that they just say "slap it on them" once they get in
8    the door, and that's all you've got to do. They ought to
9    take -- it's a foreclosure. They ought to take time to
10   make sure it's the servicer that's doing it. Whatever
11   that means. Okay. Other comments?
12        MR. REDDINGS: Mike?
13        MR. BAGGETT: Yeah.
14        MR. REDDING: Mike, I was just looking at
15   736. You know, there is no definition of "applicant" in
16   it.
17        MR. BAGGETT: Well, I don't remember what it
18   says.
19        MR. BASTIAN: That's exactly right.
20        MR. BAGGETT: Yeah, that's true. Maybe we
21   just define "applicant," and the applicant really would be
22   the mortgage servicer.
23        MR. BASTIAN: Yeah.
24        MR. REDDING: Or the mortgagee.
25        MR. BAGGETT: Or owner and holder or

Page 32

1    mortgage servicer.
2         MR. BASTIAN: And the definitions to 51.002
3    were done after Rule 735 and 736 were drafted, and that's
4    one of the things that we asked the Supreme Court to look
5    to, is to marry these two ideas and make 735 and 736 now a
6    master definition in the foreclosure statute.
7         MR. BAGGETT: Yeah, that's right.
8         MR. BASTIAN: And what we're talking about
9    would probably be taken care of. I mean, it needs to be
10   more specific, but --
11        MR. BAGGETT: Yeah, because the mortgage
12   servicer definition that y'all dealt with is in the
13   probate -- I mean, in the real property law, not in the
14   rules. So we clearly need to make the rules reflect
15   what's in the foreclosure law, and maybe that's a way to
16   do it. What do you say, chief?
17        MR. BASTIAN: No, I agree. Because that's
18   who the borrower is making their payments to, that's who
19   they assume is the mortgage servicer. I mean, I've
20   tried a bunch -- or had a bunch of these hearings before
21   judges, and they think the person that they're making
22   their own home loan payment to is the owner and holder of
23   the note. It's always the mortgage servicer. I mean,
24   they don't even know that, so and that's kind of the
25   fail-safe because that's who the borrower expects to be

Page 33

1    enforcing this note, not some, you know, Bank of New York
2    as trustee for series XYZ home equity loan --
3         MR. BAGGETT: Pool No. 216.
4         MR. BASTIAN: That just creates problems.
5         MR. REDDING: Well, the other problem --
6    Judge, this is Tim Redding. The other problem that I see
7    -- and, Tommy, you and I talk about it regularly -- that
8    we have a bunch of servicers that are corporations or
9    trusts attempting to foreclose on behalf of other trusts
10   using a power of attorney, and I don't think that's really
11   proper. I mean, we all kind of turn a blind eye to it,
12   but I think that's an issue that's out there that somebody
13   could use to potentially attack a foreclosure.
14        MR. NEWBURGER: That's what basically
15   happened in Florida where MERS has been held as being
16   unauthorized practice of law by a few judges when they
17   filed foreclosures.
18        MR. BAGGETT: Speak up. Speak up, Manny, so
19   the judge can hear you.
20        MR. NEWBURGER: That's what's happened in
21   Florida where some judges have decided that MERS' attempt
22   to conduct a foreclosure as the applicant was an
23   unauthorized practice of law. Now, they've got some
24   really good arguments for why they think that's wrong, but
25   that's been a major battleground over in that state.

## Page 34

1    MR. BAGGETT: But all MERS is is a recording
2 vehicle, right?
3    MR. NEWBURGER: Well, but they've been
4 filing foreclosures in the name of MERS. I don't think
5 anyone is doing it anymore since judges decided that that
6 constituted an unauthorized practice of law, but --
7    MR. BASTIAN: Well, part of that in Florida,
8 their foreclosure statute says only the owner and holder
9 of the note can bring the foreclosure, and MERS wasn't the
10 owner and holder of the note, and yet everybody was
11 pleading them as the owner and holder of note. All they
12 were was the mortgagee of record in the land title
13 records, and it got everybody confused, and like anything
14 new, it just created problems.
15    MR. BARRETT: Well, MERS was at great --
16 greatly at fault for creating all of those impressions.
17 They may be supposed to be merely a registrant, but they
18 haven't acted as a registrant. They have acted as a
19 for-profit business, and they have gone out and tried to
20 get into the default servicing business. At one point in
21 time they considered themselves a huge competitor for
22 doing foreclosure business, and they actually went out and
23 marketed their services to bring foreclosures.
24    MR. BAGGETT: They've quit doing all that,
25 right?

## Page 35

1    MR. BARRETT: Well, I don't know whether
2 they have or not.
3    MR. BAGGETT: Okay.
4    MR. BARRETT: It's a big company. You might
5 ask one and they say "We quit," and you ask three others,
6 they say, "Oh, no, we still like your business." They're
7 competitors, Mike.
8    MR. BAGGETT: All right. Other comments on
9 this, because this is the issue I hear about mostly from
10 judges, which is a fair issue?
11    HONORABLE PHIL JOHNSON: Could I ask a
12 question?
13    MR. BAGGETT: Yeah.
14    HONORABLE PHIL JOHNSON: Is this a private
15 corporation, corporate entity?
16    MR. BAGGETT: Tell him the history of it.
17    MR. BASTIAN: Well, basically it is a
18 utility of the mortgage banking industry to register
19 loans, so that they can debunk -- so it's just like the
20 Depository Trust Corporation for stocks and bonds. When
21 you buy and sell stock, that's where it's registered so
22 you can figure out who is the owner and holder of that
23 stock when you buy and sell it.
24    MR. McRAE: Is it cooperatively owned, I
25 guess?

## Page 36

1    MR. BARRETT: Yes.
2    MR. BAGGETT: It was started by Fannie Mae
3 or Freddie Mac.
4    MR. REDDING: Consortium.
5    MR. BASTIAN: Well, yeah, there's 270 -- I
6 mean, 2,700 members. It's Fannie Mae/Freddie Mac, VA,
7 HUD, Texas Mortgage Bankers, American Land Title, I mean,
8 all the people that are involved in the mortgage banking
9 industry, has three classes of stock, and it's basically a
10 utility for the mortgage banking industry simply to track
11 all the beneficial interests in loans that are registered
12 on the system.
13    HONORABLE PHIL JOHNSON: But it's an entity
14 that is owned by stock, stockholders?
15    MR. BASTIAN: Yes. It's a stockholding
16 entity just like the Depository Trust Corp. for Wall
17 Street.
18    MR. BAGGETT: Owned by investors primarily.
19    MR. BASTIAN: Yeah, the investors, the
20 mortgage -- the people that are involved in the mortgage
21 banking industry. It has about 80 employees. That's it.
22 All of its work is done through the mortgage servicers.
23    MR. BAGGETT: There's going to be a chapter
24 in the foreclosure book added by him on MERS, what MERS
25 is.

## Page 37

1    MR. BASTIAN: I'm sure that will solve all
2 of the world's problems.
3    MS. NEELEY: Mike?
4    MR. BAGGETT: Yeah.
5    MS. NEELEY: Just sort of an observation,
6 here's what I'm hearing, that in order to resolve these
7 issues a couple of things need to happen, define
8 "applicant" to include mortgage servicer, regularize the
9 rules in the Property Code, which have been carefully
10 thought out to deal with this issue that's developed over
11 time, and also clarify in the rules what we mean by a
12 verified application so that it's clearer that it can be
13 on information and belief. That's actually in another
14 part.
15    MS. HOBBS: Yeah, it's pretty clear.
16    MS. NEELEY: But it's not as clear as it
17 could be in the first part, so we don't get people just,
18 you know, lying in the affidavits, but they actually have
19 a basis for the verified affidavit.
20    MR. BAGGETT: I think you're right.
21    MS. NEELEY: Does that make sense?
22    MR. BAGGETT: We struggled with the issue of
23 what needed to be sworn to in '97 and '99, and we really
24 did not say that the applicant needed to be identified for
25 (1) or (2) because we didn't know that was going to be an

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTWAN HENRY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2497 |
| | § | |
| BANK OF AMERICA, N.A., BANK OF | § | |
| NEW YORK, WALTER INVESTMENT | § | |
| MANAGEMENT CORP., AND | § | |
| GREEN TREE LOAN SERVICING, LLC, | § | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff's Emergency Application for Temporary Restraining Order ("Plaintiff's Application") (Docket Entry No. 8). For the reasons stated below, Plaintiff's Application will be denied.

### I. Background

Defendant Green Tree Loan Servicing, LLC ("Green Tree") intends to sell Plaintiff's residence at a substitute trustee sale on December 6, 2015.[1] Green Tree claims to have a mortgage servicing agreement with defendant Bank of New York Mellon, the current mortgagee of a note and deed of trust secured by plaintiff's property.[2] Bank of New York Mellon appears to be in

---

[1]Notice of (Substitute) Trustee Sale, Exhibit D to Plaintiff's Application, Docket Entry No. 8-3.

[2]Id.

possession of the note, indorsed in blank, and the most recent assignee of the relevant deed of trust.[3] Plaintiff has offered no evidence to the contrary. Plaintiff has notified Green Tree that he disputes the alleged debt, and he has requested "verification and validation" pursuant to the Federal Debt Collection Practices Act.[4] Plaintiff does not appear to dispute that he is in default.

Plaintiff initiated this action on August 29, 2014, asserting causes of action for quiet title, breach of fiduciary duty, and violations of the Fair Debt Collection Practices Act.[5] At that time plaintiff requested a temporary restraining order and preliminary injunction.[6] The court denied that request.[7] The defendants have moved to dismiss Plaintiff's complaint for failure to state a claim.[8] Those motions remain pending.

---

[3]See Adjustable Rate Note, Exhibit A to Defendants Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP and the Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2006-5's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support ("Motion to Dismiss"), Docket Entry No. 6-1; Deed of Trust, Exhibit B to Motion to Dismiss, Docket Entry No. 6-2; Assignment of Deed of Trust, Exhibit C to Motion to Dismiss, Docket Entry No. 6-3.

[4]See Letter from Antwan Henry to Barret Daffin Frappier Teruner & Engel, L.L.P., November 17, 2014, Exhibit E to Plaintiff's Application, Docket Entry No. 8-3.

[5]Complaint, Docket Entry No. 1.

[6]Id.

[7]Order, Docket Entry No. 2.

[8]See Motion to Dismiss, Docket Entry No. 6; Defendants Walter
(continued...)

-2-

## II. Analysis

Plaintiff seeks a temporary restraining order to prevent the scheduled foreclosure sale.

> A movant for a preliminary injunction must demonstrate "(1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest."

Reeves v. Wells Fargo Home Mortgage, 431 F. App'x 304, 305 (5th Cir. 2011) (quoting Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991)). The court has carefully considered Plaintiff's Application together with the pleadings and evidence on file and concludes that Plaintiff has not shown a substantial likelihood of success on the merits.[9]

## III. Conclusion and Order

Having carefully considered Plaintiff's Application, the pleadings and evidence on file, and the relevant law, the court concludes that Plaintiff's Emergency Application for Temporary

---

[8](...continued)
Investment Management Corp.'s and Green Tree Servicing, LLC's Motin to Dismiss Plaintiff's Amended Complaint and Brief in Support, Docket Entry No. 7.

[9]Plaintiff's Application states that it is "supported by Plaintiff's Memorandum in Support of Ex Parte Emergency Application for Temporary Restraining Order . . . filed contemporaneously herewith," Docket Entry No. 8, p. 2, but no such memorandum was filed. The court has reviewed the Application and the attachments thereto.

Restraining Order (Docket Entry No. 8) should be and is hereby **DENIED**.

**SIGNED** at Houston, Texas, on this 5th day of January, 2015.

_____

SIM LAKE
UNITED STATES DISTRICT JUDGE

# EXHIBIT 9

Antwan Henry
11939 Canyon Valley Dr
Tomball TX 77377-7636

JAN 1 6 2015

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | |
|---|---|
| Antwan Henry, ) | Case No.: 4:14-CV-02497 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BANK OF AMERICA, N.A., ) | NOTICE OF VOLUNTARY DISMISSAL |
| AS SUCCESSOR BY MERGER TO ) | |
| BAC HOME LOANS SERVICING, LP ) | |
| TRUSTEE SERVICES, INC.; ) | |
| ) | |
| THE BANK OF NEW YORK AS TRUSTEE ) | |
| FOR THE CERTIFICATEHOLDERS CWABS, ) | |
| INC. ASSET-BACKED CERTIFICATES, ) | |
| SERIES 2006-5; ) | |
| ) | **Honorable Sim Lake, Presiding** |
| WALTER INVESTMENT ) | |
| MANAGEMENT CORP; ) | |
| ) | |
| GREEN TREE LOAN SERVICING, LLC, ) | Complaint Filed 08/29/2014 |
| ) | |
| Defendants. ) | |

Plaintiff hereby files NOTICE OF VOLUNTARY DISMISSAL of the above caption

matter.

NOTICE OF VOLUNTARY DISMISSAL                                                                1

Executed on: January 14, 2015        /s/    *Antwan Henry*_____
                                            Antwan Henry, Plaintiff


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date last written below I served a true, correct

and complete copy of the foregoing on the following parties via U.S. First Class Mail:

Bank Of America, NA, Defendant
Bank of New York, Defendant
Kathryn Buza Davis
Winston and Strawn
1111 Louisiana Street
25th Floor
Houston, TX 77002
713-651-2784
kbdavis@winston.com

Walter Investment Management Corp, Defendant
Green Tree Loan Servicing, LLC, Defendant
Juan Carlos Garcia, Sr
Sutherland Asbill & Brennan LLP
1001 Fannin St., Suite 3700
First City Tower
Houston, TX 77002
713-470-6100
713-654-1301 fax (fax)
juan.garcia@sutherland.com


Executed on: January 14, 2015        /s/    *Antwan Henry*_____
                                            Antwan Henry, Plaintiff

                                                                                    2

NOTICE OF VOLUNTARY DISMISSAL

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Antwan Henry, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2497 |
| | § | |
| Bank of America, NA, et al, | § | |
| Defendants. | § | |
| | § | |

## **O R D E R**

In accordance with the Plaintiff's Notice of Voluntary Dismissal filed on January 16, 2015,

(docket entry no. 11), this action is dismissed without prejudice.

**SIGNED** at Houston, Texas, on this 16th day of January, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE

# EXHIBIT 11

MODIF
Y

When Recorded, Return To:
Green Tree Servicing LLC
7360 South Kyrene Road, T214
Tempe, AZ 85283

Account Number: ▮▮▮▮86127

———————————— [SPACE ABOVE THIS LINE FOR RECORDING DATA] ————————————

relationships that work 

# green tree®

## Loan Modification Agreement

Borrower ("I")1: ANTWAN HENRY
Lender ("Lender"):  Green Tree Servicing LLC
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):  06/27/2005
Loan Number:  828136127 Recorded 07/05/2005 Instrument No. Y586796
Property Address [and Legal Description if recordation is necessary] ("Property"):
11939 CANYON VALLEY DRIVE
TOMBALL, TX 77377

ORIGINAL

**In this Agreement "I", "ME" or "MY" refers to the Borrower(s) signing below.**

If my representations in Section 1 continue to be true in all material respects, then this Loan Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property,
and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been
amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined
have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a
signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2
have been satisfied.

1.  **My Representations** .  I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and
       (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage
       payments now or in the near future;
   B.  I live in the Property as my principal residence, and the Property has not been condemned;
   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.  I have provided documentation for all income that I receive (and I understand that I am not required to
       disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the
       Loan Modification program ("Program"));
   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this
       Agreement, including the documents and information regarding my eligibility for the Program, are true
       and correct;

————————————————————————————————————————————————————
1If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this
document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where
appropriate.

Modification Agreement, LTR-468                                                    06/14/2011, Page 1

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**   If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 09/01/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.  The first modified payment will be due on 09/01/2015.

A. The new Maturity Date will be: 07/01/2035.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.  The new principal balance of my Note will be $289,350.48 (the "New Principal Balance").  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. $144,675.24 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $144,675.24.  Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 08/01/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 09/01/2015.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 08/01/2015 | $438.11 | $936.21 adjusts annually after year 1 | $1,374.32 adjusts annually after year 1 | 09/01/2015 | 60 |
| 6 | 3.000% | 08/01/2020 | $508.99 | Adjusts Annually | Adjusts Annually | 09/01/2020 | 12 |
| 7-19 | 4.000% | 08/01/2021 | $583.80 | Adjusts Annually | Adjusts Annually | 09/01/2021 | 166 |
| 20 | 4.000% | 06/01/2035 | $97,184.17 | Adjusts Annually | Adjusts Annually | 07/01/2035 | 1 |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

ER 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

05728632 000D0L699 01GTXX p of 14

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.**  I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. This Agreement does not change my obligation to pay Lender any other charges or amounts due according to the terms of my Loan Documents, including, but not limited to, late fees, insufficient funds fees and payments due for escrowed taxes and/or insurance.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the

ER 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

Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to the investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s).

N.   I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

In Witness Whereof, the Lender and I have executed this Agreement.

Green Tree Servicing LLC
Lender

**1OR**

ANTWAN HENRY
9-2-15
Date

By: _____
Name: Susanne F Roman
Title: Licensed Loss Mitigation Specialist
License #: 820589

_____
Date

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [SPACE BELOW THIS LINE FOR ACKNOWLEDGEMENT] _____

By: _____ 9/2/15
Jeff D. Koenig
Director of Default Services
License Number: 973833

UNOFFICIAL COPY

Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement

Modification Agreement, LTR-468

x

State of ~~Texas~~ Georgia

County of _Fulton_

Before me, ___Robert Persy___, on this day personally appeared ANTWAN HENRY _____, known to me (or proved to me on the **oath of** _____ or through _Drivers License_ to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __2__ day of __Sept, 2015__

_____
Notary Public's Signature

(Personalized Seal)

ROBERT PERSKY
NOTARY
GEORGIA
June 11, 2017
PUBLIC
DEKALB COUNTY

UNOFFICIAL COPY

ER 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

Legal Description
"Exhibit A"

LOT ONE (1), IN BLOCK TWO (2), OF CANYON GATE AT NORTHPOINTE, SECTION TWO (2), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 404083 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

D

ER 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

UNOFFICIAL COPY

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

### ACKNOWLEDGMENT

STATE OF: <u>Arizona</u>,

County ss: <u>Maricopa</u>,

On this day of_____ SEP 0 9 2015 _____, before me, the undersigned, a Notary Public in and for said state, personally appeared

<u>Jeff D. Koenig</u>, Licensed Default Services Director of Green Tree Servicing LLC

**1EE**

***Personally known to me*** or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

RUBEN DELACRUZ
Notary Public
Maricopa County, Arizona
My Comm. Expires May 11, 2019

ER 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

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

ACKNOWLEDGMENT

STATE OF:  Arizona,

County ss: Maricopa,

On this day of _____ SEP 0 9 2015 _____, before me, the undersigned, a Notary Public in and for said state, personally appeared

Jeff D. Koenig, Licensed Default Services Director of Green Tree Servicing LLC

**_Personally known to me_** or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

RUBEN DELACRUZ
Notary Public
Maricopa County, Arizona
My Comm. Expires May 11, 2018

ER 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

20150424703

# Pages 10

09/17/2015 11:49 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees   $48.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

*Stan Stanart*

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 12

B1 (Official Form 1) (04/13)

| UNITED STATES BANKRUPTCY COURT | **VOLUNTARY PETITION** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): Henry, Antwan, T. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 7520 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 11939 Canyon Valley dr Tomball, TX          ZIP CODE 77377 | Street Address of Joint Debtor (No. and Street, City, and State):          ZIP CODE |
| County of Residence or of the Principal Place of Business: Harris | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):          ZIP CODE | Mailing Address of Joint Debtor (if different from street address):          ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):          ZIP CODE | |

| **Type of Debtor** (Form of Organization) (Check one box.) | **Nature of Business** (Check one box.) | **Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other | ☐ Chapter 7          ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12          ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☑ Chapter 13 |

| **Chapter 15 Debtors** Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | **Tax-Exempt Entity** (Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts** (Check one box.)<br>☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."          ☐ Debts are primarily business debts. |
|---|---|---|

| **Filing Fee** (Check one box.)<br>☐ Full Filing Fee attached.<br>☑ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Chapter 11 Debtors**<br>**Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>------------------------------------------<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| **Statistical/Administrative Information** | | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | | United States Courts Southern District of Texas FILED<br><br>JAN 06 2015<br><br>David J. Bradley, Clerk of Court |

Estimated Number of Creditors

| ☑ 1-49 | ☐ 50-99 | ☐ 100-199 | ☐ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☑ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☑ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☐ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1) (04/13)                                                                                                  Page 2

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): Antwin T. Henry |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location<br>Where Filed: | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)        (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13)

Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): *Antwan T. Henry* |
|---|---|

| **Signatures** | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7]  I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition]  I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Debtor<br><br>X _____<br>    Signature of Joint Debtor<br>    *2 81-99C-7735*<br>    Telephone Number (if not represented by attorney)<br>    *1-06-2015*<br>    Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition.  A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>    (Signature of Foreign Representative)<br><br>    (Printed Name of Foreign Representative)<br><br>    Date |

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____<br>    Signature of Attorney for Debtor(s)<br><br>    Printed Name of Attorney for Debtor(s)<br><br>    Firm Name<br><br>    Address<br><br>    Telephone Number<br><br>    Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that:  (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section.  Official Form 19 is attached.<br><br>    Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>    Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)** | |
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Authorized Individual<br><br>    Printed Name of Authorized Individual<br><br>    Title of Authorized Individual<br><br>    Date |     Address<br><br>X _____<br>    Signature<br><br>    Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.* |

B 1C (Official Form 1, Exhibit C) (9/01)

*[If, to the best of the debtor's knowledge, the debtor owns or has possession of property that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety, attach this Exhibit "C" to the petition.]*

# UNITED STATES BANKRUPTCY COURT

In re ___Antwan Henry___ ,          ) Case No. _____

          Debtor          )

          )

          ) Chapter ___13___

## EXHIBIT "C" TO VOLUNTARY PETITION

1.  Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

N/A

2. With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

N/A

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re _Antuan Henry_                        Case No._____
            Debtor                                                (if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

❐ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

❐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

☑ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

❏ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

❏ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
❏ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
❏ Active military duty in a military combat zone.

❏ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: _1-06-2015_

# EXHIBIT 13

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS



In Re: Antwan T Henry

Case No.: 15−30225

Debtor

Chapter: 13

**ENTERED**
**01/22/2015**

## ORDER OF DISMISSAL

Appropriate notice having been given that the case would be dismissed without further notice if the debtor failed to comply with the Deficiency Order issued in this case, and

The Clerk having informed the court that the debtor has failed to satisfy the deficiency, as set out in the docket entry for this order

**It is ORDERED that this case is DISMISSED.**

Signed and Entered on Docket: 1/22/15

KAREN K BROWN
United States Bankruptcy Judge

# EXHIBIT 14

United States Bankruptcy Court
Southern District of Texas

AUG 06 2018

David J. Bradley, Clerk of Court

Fill in this information to identify your case:

United States Bankruptcy Court for the:

Southern District of Texas

Case number (*if known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☑ Chapter 13

☐ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy     12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** | | |
| Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Antwan<br>First name<br><br>Middle name<br><br>Henry<br>Last name<br><br>Suffix (Sr., Jr., II, III) | N/A<br>First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | N/A<br>First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name | N/A<br>First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 7 5 2 0<br>OR<br>9 xx – xx –____ ____ ____ ____ | xxx – xx –____ ____ ____ ____<br>OR<br>9 xx – xx –____ ____ ____ ____ |

Debtor 1  **Antwan Henry**
First Name      Middle Name      Last Name

Case number (if known)_____

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

☑ I have not used any business names or EINs.

Business name _____

Business name _____

EIN __ __ - __ __ __ __ __ __ __

EIN __ __ - __ __ __ __ __ __ __

☐ I have not used any business names or EINs.

Business name _____

Business name _____

EIN __ __ - __ __ __ __ __ __ __

EIN __ __ - __ __ __ __ __ __ __

**5. Where you live**

**11939 Canyon Valley Drive**
Number    Street

**Tomball**            **TX**    **77377**
City            State    ZIP Code

**Harris**
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number    Street _____

P.O. Box _____

City            State    ZIP Code

If Debtor 2 lives at a different address:

**N/A**
Number    Street

City            State    ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.

Number    Street _____

P.O. Box _____

City            State    ZIP Code

**6. Why you are choosing *this district* to file for bankruptcy**

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain.
(See 28 U.S.C. § 1408.)

_____
_____
_____

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason. Explain.
(See 28 U.S.C. § 1408.)

_____
_____
_____

| Debtor 1 | __Antwan Henry__ | | | Case number (if known)_____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7. The chapter of the Bankruptcy Code you are choosing to file under**

Check one. (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

❑ Chapter 7

❑ Chapter 11

❑ Chapter 12

☑ Chapter 13

**8. How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

❑ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

❑ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

❑ No

☑ Yes.  District __Texas Southern__    When __01/06/2015__   Case number __15-30225__
                                                                  MM / DD / YYYY

         District _____    When _____   Case number _____
                                                                  MM / DD / YYYY

         District _____    When _____   Case number _____
                                                                  MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

❑ Yes.  Debtor _____    Relationship to you _____

         District _____    When _____   Case number, if known_____
                                                                  MM / DD / YYYY

         Debtor _____    Relationship to you _____

         District _____    When _____   Case number, if known_____
                                                                  MM / DD / YYYY

**11. Do you rent your residence?**

☑ No.  Go to line 12.

❑ Yes. Has your landlord obtained an eviction judgment against you?

         ❑ No. Go to line 12.

         ❑ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Debtor 1 **Antwan Henry**
First Name   Middle Name   Last Name

Case number (if known)_____

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number     Street

_____

_____
City                                    State     ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☐ No. I am not filing under Chapter 11.

☐ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No

☐ Yes. What is the hazard?    _____

_____

If immediate attention is needed, why is it needed? _____

_____

Where is the property?    _____
                          Number      Street

_____

_____
City                                    State     ZIP Code

Debtor 1    **Antwan Henry**
            First Name    Middle Name    Last Name          Case number (if known)_____

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1 __Antwan Henry_____   Case number (if known)_____
First Name   Middle Name   Last Name

---

**Part 6:   Answer These Questions for Reporting Purposes**

16. What kind of debts do you have?

16a. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.
☑ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.
☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

_____

17. Are you filing under Chapter 7?

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☑ No.  I am not filing under Chapter 7. Go to line 18.

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No
☐ Yes

18. How many creditors do you estimate that you owe?

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

19. How much do you estimate your assets to be worth?

☐ $0-$50,000
☐ $50,001-$100,000
☑ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

20. How much do you estimate your liabilities to be?

☐ $0-$50,000
☐ $50,001-$100,000
☑ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**Part 7:   Sign Below**

For you

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

✗ _____   ✗ N/A _____
Signature of Debtor 1                 Signature of Debtor 2

Executed on __08/06/2018__            Executed on _____
MM  /  DD  /YYYY                       MM  /  DD  /YYYY

Debtor 1 __Antwan Henry__
First Name    Middle Name    Last Name

Case number (if known)_____

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes. Name of Person_____
        Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

| ✗ _____ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date __08/06/2018__<br>MM / DD / YYYY | Date _____<br>MM / DD / YYYY |
| Contact phone __(281) 995-7735__ | Contact phone _____ |
| Cell phone _____ | Cell phone _____ |
| Email address _____ | Email address _____ |

# EXHIBIT 15

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS

In Re:    Antwan T Henry

Case No.: 18−34325

Debtor

ENTERED
09/24/2018

Chapter:  13

---

## ORDER OF DISMISSAL

Appropriate notice having been given that the case would be dismissed without further notice if the debtor failed to comply with the Deficiency Order issued in this case, and

The Clerk having informed the court that the debtor has failed to satisfy the deficiency, as set out in the docket entry for this order

**It is ORDERED that this case is DISMISSED.**

Signed and Entered on Docket: 9/24/18

MARVIN ISGUR
United States Bankruptcy Judge

# EXHIBIT 16

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**1196850020001**

Tax Year: 2018

🖶 **Print**

| Owner and Property Information | | | |
|---|---|---|---|
| Owner Name & Mailing Address: | **HENRY ANTWAN**<br>**11939 CANYON VALLEY DR**<br>**TOMBALL TX 77377-7636** | Legal Description: | **LT 1 BLK 2**<br>**CANYON GATE AT NORTHPOINTE SEC 2** |
| | | Property Address: | **11939 CANYON VALLEY DR**<br>**TOMBALL TX 77377** |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Market Area | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved | 6,270 SF | 3,039 SF | 2598.01 | 26031 | 400 -- ISD 26 - Tomball ISD | 4768B | 328H |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 04/13/2018 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2017 Rate | 2018 Rate |
|---|---|---|---|---|---|---|
| **None** | 026 | TOMBALL ISD | | Certified: 08/10/2018 | 1.340000 | 1.340000 |
| | 040 | HARRIS COUNTY | | Certified: 08/10/2018 | 0.418010 | 0.418580 |
| | 041 | HARRIS CO FLOOD CNTRL | | Certified: 08/10/2018 | 0.028310 | 0.028770 |
| | 042 | PORT OF HOUSTON AUTHY | | Certified: 08/10/2018 | 0.012560 | 0.011550 |
| | 043 | HARRIS CO HOSP DIST | | Certified: 08/10/2018 | 0.171100 | 0.171080 |
| | 044 | HARRIS CO EDUC DEPT | | Certified: 08/10/2018 | 0.005195 | 0.005190 |
| | 045 | LONE STAR COLLEGE SYS | | Certified: 08/10/2018 | 0.107800 | 0.107800 |
| | 544 | HC MUD 280 | | Certified: 08/10/2018 | 0.625000 | 0.670000 |
| | 635 | HC EMERG SRV DIST 16 | | Certified: 08/10/2018 | 0.049470 | 0.049570 |
| | 666 | HC EMERG SERV DIST 11 | | Certified: 08/10/2018 | 0.039040 | 0.036060 |
| | 907 | NORTHPOINTE WCID | | Certified: 08/10/2018 | 0.280000 | 0.275000 |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway**.

### Valuations

| | Value as of January 1, 2017 | | | Value as of January 1, 2018 | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 30,360 | | Land | 30,360 | |
| Improvement | 190,588 | | Improvement | 190,588 | |
| Total | 220,948 | 220,948 | Total | 220,948 | 220,948 |

### Land

| | Market Value Land | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 6,050 | 1.00 | 1.00 | 1.00 | -- | 1.00 | 5.00 | 5.00 | 30,250.00 |
| 2 | 1001 -- Res Improved Table Value | SF3 | SF | 220 | 1.00 | 0.10 | 1.00 | -- | 0.10 | 5.00 | 0.50 | 110.00 |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1999 | Residential Single Family | Residential 1 Family | Good | 3,039 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above *attached* garages is included in the square footage living area of the dwelling. Living area above *detached* garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage

measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

## Building Details (1)

| Building Data | |
|---|---|
| Element | Detail |
| Cost and Design | New / Rebuilt |
| Cond / Desir / Util | Average |
| Foundation Type | Slab |
| Grade Adjustment | B- |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Frame / Concrete Blk |
| Exterior Wall | Brick / Masonry |
| Element | Units |
| Room: Total | 8 |
| Room: Rec | 1 |
| Room: Half Bath | 1 |
| Room: Full Bath | 2 |
| Room: Bedroom | 4 |
| Fireplace: Metal Prefab | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 584 |
| ONE STORY MAS PRI | 947 |
| OPEN FRAME PORCH PRI | 24 |
| ONE STORY MAS PRI | 462 |
| BASE AREA UPR | 584 |
| ONE STORY MAS UPR | 462 |

## Extra Features

| Line | Description | Quality | Condition | Units | Year Bulit |
|---|---|---|---|---|---|
| 1 | Gunite Pool | Average | Average | 720.00 | 2005 |